WILLIAM M. CAMPION v. NELLIE M. LATTIMER.

FILED NOVEMBER 5, 1903.   No. 13,257.

1. **Bastardy: COMPLAINT: SUFFICIENCY.** In a bastardy proceeding, a complaint, in which it is stated that the complainant is an unmarried woman, residing in the county where the complaint was filed, and that, on a certain day· immediately preceding its filing, she was delivered of a bastard child, and that the accused is its father, is sufficient to sustain a verdict of guilty and a judgment thereon, when assailed for the first time in the appellate court.

2. **Witness: LEADING QUESTIONS: DISCRETION.** The matter of allowing interrogatories of a leading character to be put to a witness, rests in the sound discretion of the trial court, and a clear abuse of such discretion must exist to work a reversal.

3. ————: **IMMATERIAL EVIDENCE.** The· refusal to allow the introduction of evidence to dispute the testimony of a witness upon an immaterial matter is not reversible error.

4. **Evidence of Alibi: REBUTTAL.** Where evidence is introduced by an accused for the purpose of establishing an alibi, testimony which tends to dispute such evidence may be properly received in rebuttal.

5. **Judgment: VERDICT: EVIDENCE.** Where the record contains competent evidence from which the jury may have reasonably arrived at their verdict, the judgment of the trial court will not be reversed for want of evidence to sustain it.

6. **New Trial.** Where the alleged newly discovered evidence is merely cumulative, and it appears that the witnesses named in the affidavits were all upon the witness stand and testified during the trial, and no excuse is shown for their not disclosing all of the facts known to them at that time, a motion for a new trial, based on that ground, should be overruled.

ERROR to the district court for Seward county: BENJAMIN F. GOOD, JUDGE. *Affirmed.*

*Norval Bros.* and *Landis & Schick,* for plaintiff in error.

*J. J. Thomas, M. D. Carey* and *C. E. Holland, contra.*

BARNES, C.

This was a bastardy proceeding commenced before a justice of the peace in Seward county, in which Nellie M. Lattimer charged William M. Campion with being the father of her bastard child. The accused was bound over to the district court for said county, where, on a trial, he was found guilty by a jury, and judgment was entered on the verdict, ordering him to pay the sum of $1,000 for the support of the child, in payments as follows: $200 on January 1, 1903, and $100 on the 1st day of January, each year following, until the judgment was fully paid. From said judgment the accused prosecuted error.

We will consider the alleged errors in the order in which they are presented by counsel. It is first contended, with considerable energy, that the complaint on which the accused was tried was insufficient, in form and substance, to sustain the verdict and judgment. It is as follows:

"STATE OF NEBRASKA, }
   SEWARD COUNTY.       }

"This 16th day of July, 1901, Nellie M. Lattimer personally appeared before me, J. W. McCaulley, a justice of the peace in M. Township in Seward county, and being by me first duly sworn, on oath, says that she is an unmarried woman, resident of Seward county in the state of Nebraska; that on the 29th day of June, 1901, she was delivered of a bastard child, and that William M. Campion is the father of said child.

       "(Signed)                NELLIE M. LATTIMER."

It will be observed that this complaint is substantially in the language of the statute (Compiled Statutes, ch. 37, sec. 1), which is as follows:

"That on complaint made to any justice of the peace in this state by any unmarried woman resident therein, who

shall, thereafter, be delivered of a bastard child   *   *   *
accusing on oath, or affirmation, any person of being the
father of said child, the justice shall take such accusation
in writing and thereupon issue his warrant," etc.

It is the settled law of this state that, even in criminal
prosecutions, an information is sufficient if in the language
of the statute. *Leisenberg v. State,* 60 Neb. 628. It follows
that in a civil proceeding, such as this is, nothing more
could be required. The language used in the complaint
should be construed according to its ordinary meaning, and
the words should be given their usual definition. All that
the statute requires is, that the complainant be an unmar-
ried woman; that she be delivered of a bastard child; and
that she state who the father of the child is. These require-
ments are fully met by the above complaint.

It is urged that it does not state that the complainant
was unmarried when the child was begotten and born, and
therefore is insufficient; and this contention is based on
the opinion in *Parker v. Nothomb,* 65 Neb. 315. An exam-
ination of that case discloses that the question involved
therein was one which had never been adjudicated, to wit:
Whether a woman who was married after the birth of a
bastard child could maintain an action under our statutes.
And it was held that the words "unmarried woman" re-
lated to the condition of the mother at the time of the con-
ception and birth of the child; that the fact that, after its
birth, she had married a person other than the putative
father did not prevent a prosecution under the statute. In
the case at bar, no such state of facts exists. The complaint
shows that the prosecutrix, at the time it was filed, was
unmarried, and the positive statement is that less than one
month before that time she was delivered of a bastard
child, and that the accused was its father. This was a
sufficient allegation of the fact that, at the time of the con-
ception and birth of the child, the prosecutrix was an un-
married woman. The word "bastard" in our language,
both in its legal signification and in its literary use, has a
well defined meaning. Webster defines it as follows: "A

natural child; a child begotten and born out of wedlock."
Now, in order that the child be begotten and born out of
wedlock, it follows that the mother is an unmarried woman.
In law the word is defined as follows:

"A child whose parents were not married to each other
at the time of its birth." So it would seem that the objec-
tion is without force. But this matter has been before the
court of last resort in some of our sister states. In the case
of *Thomas v. State*, 37 Fla. 378, the court had under con-
sideration a complaint based on a statute very similar to
ours. The allegations of the complaint were as follows:

The complainant "deposes and says that she is a single
woman, and is now pregnant with child * * * which
said child when born will in law be deemed and held to be a
bastard."

This complaint was assailed because it did not allege
that the complainant was single at the time of conception,
but the court held it good. In the opinion we find the fol-
lowing: The averment, "which said child when born will
in law be deemed and held to be a bastard," taken in con-
nection with the other averments, can not be considered as
a mere conclusion of law. In *Robb v. Hewitt*, 39 Neb. 217,
we find the following:

"The complaint in a bastard proceeding, where it charges
the date of the birth of the child, need not set out the time
or place when or where it was begotten."

Judge IRVINE, in his opinion in that case, says:

"The complaint is in a form which has in its support at
least the sanction of custom, but its sufficiency has never
been directly determined by this court. Were it not for
the provisions of section 1, chapter 37, Compiled Statutes
(Annotated Statutes, 6250) requiring in such cases an
examination under oath of the prosecutrix, before the jus-
tice of the peace to whom the complaint is made, there
would be some force in the argument that the defendant
should be informed by the complaint of the time and place
of the alleged intercourse. But the section cited provides
for such an examination, permits the accused to cross-

examine, and requires that the examination shall be reduced to writing, and certified to the trial court, where it 'shall be given in evidence.' These provisions furnish the accused with all requisite information."

In the case at bar, the prosecutrix was examined before the magistrate, and her evidence was reduced to writing; the accused was present in person and was permitted to cross-examine her to any extent desired. If it were true, or if there were anything in the contention that she was not an unmarried woman at the time the child was begotten and born, it could have been brought out upon such examination; and the defendant, if that fact appeared, would have been immediately discharged from custody. In *Parker v. Nothomb*, 65 Neb. 315, the court said:

"In this connection, counsel for the defendant say that it has been the universal practice in this state to allege in the complaint that the prosecutrix is unmarried when she makes the same, and to insert no averment with reference to her status at the time of coition and the birth of the child; that this is a practical construction of the statute which should have its due weight in the determination of the question. A sufficient answer to this is, we think, that, without exception, until the present case arose, the mother was unmarried when the prosecution was begun, and the general allegation in a complaint that the complainant was an unmarried woman includes the essential averment as to her status at the time her illegitimate child was begotten and born."

We therefore hold that the complaint in this case was sufficient, especially so where it was not assailed during the trial, and its insufficiency, as in the case at bar, is urged for the first time in this court.

It is next contended that the court was guilty of an abuse of discretion in permitting leading questions to be propounded to the prosecutrix on direct examination. It appears from the record, quite clearly, that the prosecutrix was very dull of apprehension; that she did not understand the meaning of the words "sexual intercourse," or "cohabi-

tation," and that it took considerable effort to make her understand the meaning of the questions put to her. Therefore, much latitude was necessarily given counsel in framing his questions. The matter of allowing interrogatories of a leading character to be put to a witness rests in the sound discretion of the court, and a clear abuse of such discretion must exist to work a reversal. *Welsh v. State*, 60 Neb. 101. After carefully examining the record, we can not say that there was such an abuse of discretion by the trial court, in this case, as to call for a reversal of the judgment.

A complaint is made that the trial court refused to permit defendant to introduce testimony to show that the complainant was 27 years old instead of 25, as testified by her. This evidence was wholly immaterial, and its rejection could not possibly work any injury to the defendant.

It is further objected that the court erred in receiving the evidence of one John Lattimer, for the purpose of showing the whereabouts of the defendant on a certain night during the latter part of September, 1900, and at a time within the period of gestation. There was no error in receiving this testimony. The defendant had attempted, by his defense, to establish an alibi, and this testimony was very competent to meet his proof. Again, the evidence was merely cumulative, and its reception would not be reversible error.

It is next contended that the evidence does not support the verdict. After a careful reading of the testimony, we are not prepared to say that the verdict is wholly unsupported by the evidence. It is true the evidence is conflicting, but that is to be expected, especially in cases of this kind. There is, however, competent testimony contained in the record from which the jury could reasonably have arrived at their verdict, and that, too, without disregarding any of the instructions of the court. It was the special province of the jury to reconcile the conflicting parts of the evidence, and determine the question of fact from the evidence and all of the circumstances surrounding the case,

and we are unable to say that there is such a total lack of evidence to sustain the verdict as will warrant us in granting a new trial.

Lastly, it is contended that the court erred in overruling the supplemental motion for a new trial. This motion was supported by affidavits on the one hand, and opposed by affidavits on the other. An examination of the affidavits tendered by the accused, discloses that the alleged newly discovered evidence is merely cumulative; that the wit-' nesses were on the stand and testified at the trial, and no reason is given why they did not disclose all of the facts within their knowledge at that time. It was attempted by these affidavits to discredit the testimony of the prosecutrix, and yet the statements contained in them could be substantially true, and her testimony would not be materially shaken thereby. The court determined the disputed facts, and we are not justified in disturbing his findings. It follows that the showing made was insufficient to require the trial court to grant a new trial.

A careful examination of the record discloses no reversible error, and we therefore recommend that the judgment of the district court be affirmed.

GLANVILLE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.