JOSEPH W. GRAY ET AL., APPELLEES, V. CHICAGO, ST. PAUL,
    MINNEAPOLIS & OMAHA RAILWAY COMPANY, APPEL-
    LANT.

FILED FEBRUARY 29, 1912.    No. 16,566.

1. Trial: INSTRUCTIONS: ABANDONMENT OF ISSUE. Where at the trial
    no attempt is made to prove some of the allegations of the peti-
    tion and plaintiffs abandon one of the grounds upon which they
    base their right to recover, the issues made by the pleadings as
    to such matters should be eliminated from the charge to the
    jury.

2. Waters: OBSTRUCTION OF WATERCOURSE: LIABILITY FOR DAMAGES.
    Where, about 20 years before the damages complained of, the
    channel of a natural stream was extended by a ditch, which had
    been properly established and suitably constructed by the county
    authorities under the drainage laws, so that the stream flowed
    under a railroad trestle bridge, and has so continued to flow, and
    the trestle bridge as originally built was large enough to allow
    ample opportunity for flood-waters to escape when they over-
    flowed the banks of the ditch, the duty of the railway company
    with respect to keeping and maintaining a sufficient opening to
    permit the waters of the stream to pass became the same as it
    would be if the extended creek channel had been the natural
    channel, and if any damages were caused by the careless and
    negligent obstruction of a proper passageway the railway com-
    pany would be liable for such damages.

3. ——: ——: ——. If, however, in such case, the filling up of
    a proper and sufficient waterway for the flood-waters was not oc-
    casioned by obstructions negligently permitted to remain in and
    about the trestle, but was caused by a gradual deposit of silt
    brought down through the extended channel of the creek, and
    by which gradual deposit the elevation of a portion of the land
    above the trestle not upon the defendant's right of way was
    raised to such an extent as to prevent the flood-waters reaching
    the trestle at the time of the damages complained of, then the
    defendant cannot be held liable for such damages.

4. Drains: OBSTRUCTIONS: DUTY OF COUNTY. It is the duty of county
    authorities, under chapter 89, Comp. St. 1907, to keep the chan-
    nel of a county ditch free from obstructions.

5. Limitation of Actions: ACCRUAL OF CAUSE OF ACTION. Where
    crops are destroyed by the negligence of a railway company in
    permitting a waterway which it was its duty to keep open

to become obstructed, the cause of action for such damages accrues at the time the crops are destroyed.

6. Pleading: AMENDMENT OF REPLY. Where the answer alleged that at the time the crops were planted the plaintiffs knew of the conditions, and that in all probability they would be destroyed by flood-waters, it is not error to permit an amendment to the reply setting forth that before the crops were planted the defendant company through its agent promised to clear the waterway so as to drain the plaintiffs' lands, and to admit in evidence proof tending to establish such promise.

7. Evidence: COMPETENCY. The purport of certain letters, set forth in the opinion, *held* to afford no evidence of ratification of such a promise.

8. Trial: QUESTION FOR JURY: OBSTRUCTION OF WATERCOURSE. Where the main point of contention is whether the damming of the flood-waters was caused by the defendant negligently permitting the trestle to become obstructed, or whether the filling in of the trestle was owing to natural causes, and the evidence is conflicting, this question of fact should be submitted to a jury for its determination.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. *Reversed.*

*C. C. Wright, B. T. White, B. H. Dunham* and *Herman Aye,* for appellant.

*R. E. Evans* and *Shull, Farnsworth & Sammis, contra.*

LETTON, J.

This is an action to recover for flood damages to crops in the years 1907 and 1908. The petition, much condensed, alleges that the defendant's railway crosses a running stream, known as "Elk Creek," near plaintiffs' land; that prior to 1885 Elk Creek in that vicinity spread out forming a marsh, and finally draining into the Missouri river; that the drainage of the flood-waters was through and over the marsh; that in 1885 the railway was constructed across the marsh and a trestle about 160 rods long built for the passage of the flood-waters of Elk

Creek, and that the natural flow of these waters was under this trestle; that in 1886 a drainage district was organized and a ditch constructed from Elk Creek through the marsh

and under the trestle for the purpose of draining the ordinary waters of the marsh, but not for the purpose of draining the flood-waters; that afterwards the defendant filled the trestle, leaving about 284 feet, and by so doing negligently failed to leave sufficient openings in the em-

bankment to carry off the flood-waters; that the piling and the trestle were not placed at right angles with the flood-waters, but in a diagonal direction with reference thereto; that a large amount of weeds and debris accumulated around the trestle and dammed the waters, and thereby caused a deposit of debris and sediment which gradually filled the opening under the trestle. It is further alleged that after the ditch was made it became the natural channel of Elk Creek, and that for more than ten years before the matters complained of the flood-waters flowed through the trestle; that the defendant fastened to the trestle two or more strands of barbed wire, by which flood matter coming down the stream choked the channel, filled it with sediment and caused the water to back up and flood the plaintiffs' lands; that there was for many years a space of more than 6 feet between the ground and the stringers of the trestle, but that defendant negligently allowed the space to be filled up to within about 15 inches of the bottom of the stringers; that defendant, in 1906 and 1907, dug a ditch on the northwest side of the trestle in its right of way, and threw the dirt from the excavation out and under the trestle, raising the accumulation of dirt about 18 inches; that before these wrongful acts the flood-waters sometimes overflowed plaintiffs' land, but passed off within a few hours; but that by the filling of the trestle the usual flow of the flood-waters has been cut off, and in case of unusual floods the waters are dammed and held on plaintiffs' land, whereby their crops have been destroyed.

The answer denies negligence and that defendant shortened the trestle; alleges that plaintiffs' land was a swamp when the railroad was built, without watercourse or drain; alleges that Dakota county constructed the drainage ditch, and it was the duty of the county to maintain it and keep it clear; that the injuries received were due to the construction and maintenance of the ditch and to dikes built by plaintiffs around their land which changed the flow of water over the same. It is also alleged that the situation was well known to the plaintiffs before the

crops were planted. The reply alleged that the trestle was originally constructed a half mile in length and was afterwards filled in. During the trial an amendment to the reply was permitted, pleading that in 1906 the defendant agreed, through its agent, C. P. Hill, with the plaintiffs that it would replace a portion of the wooden trestle with a steel span about 60 feet long, and drain the plaintiffs' land, and that the plaintiffs relied upon this agreement in planting their crops in 1907 and 1908.

The evidence consists of about 1,200 pages of typewriting, besides maps, profiles and other exhibits. The court gave 48 instructions. There are 145 assignments of error. It is impossible to do more than mention a few of these, or to give more than a general statement of the evidence.

The line of defendant's railway crosses what is known as "Big Marsh" in Dakota county, which is situated on what is commonly called the "Missouri river bottoms." Elk Creek, which is a stream about 40 miles long, flows in a southeasterly direction through the higher lands to the north and west, and when the railway was built discharged its waters upon the surface of the bottom lands at a point near the southwest corner of plaintiffs' lands. The Elk Creek ditch, which was dug in 1886, began where the creek debouched upon the bottom lands, and after its excavation the waters which formerly were discharged on the surface of the lower lands, thus creating the swamp, were kept within its banks and carried southward under the trestle into a creek. The ditch bottom being lower than the adjoining land, the surface waters drained into it, and for a number of years after it was in operation it successfully drained the land of plaintiffs and others lying in the swamp. At the trial it was admitted by the plaintiffs that the trestle was originally 270 feet long, and that in 1907 it was 283 feet in length, so that it was slightly longer at the time the damage occurred than it was when originally constructed. By this admission the charge of negligence in shortening the trestle was disposed of. These further facts seem established: That in 1885 there

was no defined channel under the trestle, but merely a portion of the swamp, the waters slowly draining southward, and that at that time plaintiffs' lands were marshy and unfit for cultivation, the same as most other land in the vicinity; that plaintiffs suffered loss of crops substantially as alleged; that their lands for a long time after the construction of the railway embankment and ditch, when flooded, drained to the south and east and through and under the trestle, and that the trestle gradually became nearly filled with earth and silt, except where the ditch passed under.

The main point in controversy, and that upon which the decision as to the rights or liabilities of the respective parties must eventually in great measure rest, is whether or not the sediment which caused the partial filling of the trestle was deposited as the natural consequence of the slackening of the current of Elk Creek when it flowed from the higher lands into the ditch and the deposit under a well-known natural law of the matter held in suspension during its more rapid flow, or whether such filling was caused by the negligence of defendant.

An examination of the maps and plats in evidence and the testimony of the engineers shows that the same phenomena have occurred with reference to the banks of the ditch as are apparent on the banks of natural streams under similar conditions. Where a stream which is heavily loaded with silt overflows its banks, the solid material held in suspension, when the rapidity of the current is slackened, tends to settle and be deposited. As a natural result it is almost invariable in Nebraska that the land near the channel on each side of a stream flowing through an alluvial plain is slightly higher in elevation than that which lies farther from the stream. We are probably entitled to take judicial notice of this fact, but, whether we are or not, the testimony found in this record establishes it. The accompanying plat shows that at a point upon the half section line west of plaintiffs' lands where it intersects the ditch the elevation is 107.5,

gradually lowering to the eastward to about 101.3 on plaintiffs' lands, and that all along the line of the ditch to some distance south of the trestle the banks of the ditch are higher and gradually slope away to the nearly level surface lying to the eastward. At a distance of about 600 feet below the trestle the elevation is 102.4 at the ditch bank and 100.5 to the east of it, and 1,200 feet below it is 101.5 at the bank and 100.3 at a point to the east a short distance.

The defendant contends that the waters were surface waters, as to which it owed no duty to plaintiffs; that silt was deposited all along the course of the ditch above and below the trestle by natural causes; that the resulting elevation of lands belonging to private parties lying between the right of way and the plaintiffs' lands prevented the waters reaching the trestle, and consequently that the keeping open of the trestle would have had no effect.

At the trial the plaintiffs seem to have abandoned the theory that the original construction of the railroad embankment and trestle was negligent, and the contention that the trestle has been shortened; in fact, it is said in their brief: "It is not claimed by the plaintiffs that their damages resulted primarily by reason of the construction of a permanent railroad grade to the north and east of the trestle in question. It is probably true that the trestle itself, when free from obstruction, was amply sufficient to provide an outlet for all waters that might come down from above, and the chief complaint of plaintiffs is with relation to the filling in of said trestle and of the right of way immediately adjacent thereto. The point that we make and insist upon is that the obstructions to the flow of the flood-waters from plaintiffs' land existed upon the right of way of the defendant company, and that they arose by reason of the defendant's negligence in permitting the filling up of the trestle with dirt and debris, and that the maintenance of the ditch by the county, whether proper or improper, did not cause the water to be dammed up and held on plaintiff's land with-

54

out opportunity to flow therefrom in the natural and
ordinary way and direction. Also, the defendant was
not relieved of the duty of preventing the obstruction to
the flow of the water over and across its right of way,
even though the county did not properly maintain the
ditch, or even though the obstructions formed at or near
the ditch at the point where it crossed the right of way."

The court evidently did not take the same view of the
issues as the plaintiffs assert in this court. It gave to the
jury, in defining the issues, the allegations of the petition
at great length, including the charge of negligence in
shortening the trestle, which had been eliminated, and
further instructed them that "the gist of this action is
the charge of negligence and the want of proper care on
the part of the defendant in the construction of its trestle-
bridge across Elk Creek and the openings in the embank-
ment east thereof across what is called 'Big Marsh,'"
and that, to entitle plaintiffs to recover, "it must further
appear from the evidence that such overflow was directly
and naturally caused by the negligent and improper con-
struction of the defendant's trestle bridge and embank-
ment."

Instructions Nos. 7, 9 and 10, which are assigned as
erroneous, were based upon this theory of the case. By
instruction No. 7 the jury were told that "it was the duty
of defendant to so construct the trestle bridge over Elk
Creek and to provide openings in the embankment east
thereof as to permit the passage in the channel of the
creek of such quantities of water as might reasonably be
expected or anticipated in ordinary years." The ninth
instruction embodies the same idea in greater detail. By
the tenth instruction the jury were told that if the de-
fendant constructed such a trestle and embankment, as
stated and defined in the preceding instructions, then it
would not be guilty of negligence and would not be liable,
and that, "on the other hand, if the jury from the evidence
believe that the defendant failed to exercise and employ
such reasonable and proper care and skill, as stated and

defined in said last preceding instruction, in the construc-
tion of said trestle bridge and embankment, and that the
overflow on the plaintiffs' land was the direct and natural
result of such failure, and that the plaintiffs suffered
damages in consequence thereof, then the defendant
would be liable in this case for only such damages as
were caused by its negligence in backing up said flood-
waters and holding the same on crops of plaintiffs." This
portion of the charge must have tended to divert the at-
tention of the jury from the questions that were really
involved in the case. The facts hereinbefore stated show
that they were not applicable to the evidence, and that
the jury were thus permitted to base a verdict against the
defendant upon facts suggested and implied by the in-
structions, but not proved by any evidence. These in-
structions also seem to be inconsistent with others given.
That this is the case is not seriously disputed by plain-
tiffs' counsel, but, say they, the inconsistency was pro-
duced by the court giving other instructions stating the
law more favorably to the defendant than the facts war-
ranted.

In such a case as this it is a difficult matter for a trial
court to state clearly the real issues. Many of the alle-
gations of the petition were not sustained by the evidence,
and it was unnecessarily lengthy and involved, so that
the task for the court was needlessly harder than it would
have been if the pleadings had truly reflected the real
issues. In such a case the trial court would be justified
in taking all the time necessary, even to the suspending
of the trial, to give an opportunity to prepare instructions
clearly presenting the true and actual issues to the jury.
We believe the instructions given, predicated on the con-
tention that the original construction of the railroad and
trestle was negligent, and permitting the jury to consider
and return a verdict on such an issue, were prejudicially
erroneous to the defendant, as outside of the true issues,
confusing and misleading in their tendency. This is more
especially so in such a case as this where the question of

liability rests upon such a narrow margin. There was no negligence in the construction of the railroad or trestle in 1879, and the evidence shows that for more than 20 years after the trestle was constructed overflows of Elk Creek and of the ditch were infrequent, that flood-waters were rapidly discharged from the lands of the plaintiffs and others, and that it was only after the bed and banks of the ditch had been raised by the deposit of silt, and after a period or cycle of dry years had given place to a series of years in which rainfall was more abundant, that trouble ensued. It was after a heavy flood in 1906, which brought down much sediment by erosion from the higher lands, that the injuries complained of occurred.

Since there must be a new trial for the giving of the instructions referred to and other errors, we deem it wise to indicate our view upon some of the matters of law in dispute. By instructions given at the request of defendant, the jury were told in substance that the undisputed evidence shows that the county constructed the Elk Creek ditch and changed the course of the waters and increased the volume of the same at the place where the ditch flows under the railroad, and that it is not the duty of the defendant to maintain the ditch, but the duty of the county to maintain the ditch and keep the same free from obstructions across the right of way; "that the defendant company cannot be held liable in this case on account of obstructions in the channel of the Elk Creek ditch, for the reason that there is no duty in the law on the defendant to keep said ditch free from obstructions, and the defendant company could only be made liable in case it wilfully placed obstructions in the channel of said ditch in such a manner as to obstruct the free flow of the water therein and cause the water to overflow its banks." By other instructions the jury were told "that the defendant is not liable on account of any fill under its trestle which was caused by the natural overflow of the Elk Creek ditch;" and, further, that, "if such flood waters caused a deposit of silt and sediment under the railway trestle in question

by the natural operation of said stream, and during the years past caused said trestle to be filled on account of such deposit to such an extent as to destroy the drainage of plaintiffs' land, then the defendant company cannot be held liable therefor in this action."

Do these latter instructions state the law correctly? Was the defendant under any duty, after the ditch was dug and these flood-waters concentrated at and above the trestle, to keep the trestle free from obstructions? If the ditch had been a natural watercourse it would have been its duty to keep and maintain a passageway for the waters which might reasonably be anticipated to flow therein, both while in the channel and while in flood. When Elk Creek was in fact extended under the trestle, did the same duty attach? This was a county ditch, established under the drainage statutes, and, if any additional duties or obligations were imposed upon the defendant by its construction, they were presumably taken into account in estimating benefits or damages when the proceedings to establish the ditch were had. The new channel had been in use for nearly 20 years in 1906. While we believe it to be the duty of the county to keep the channel of the ditch clear, we are also of the opinion that the change in the channel imposed the liability on the defendant to keep its trestle unobstructed to the same extent as if it were a natural stream at that point. Of course, this does not mean that defendant must clear away a general deposit of sediment above the trestle, unless the deposit is caused by a negligent failure to maintain a proper passageway thereunder for the loaded waters; for, if the deposit would have taken place even if the lands had been in their natural state unencumbered by the railway and trestle, the defendant is clearly not responsible for the silting, and not liable for any damages caused thereby. A number of the instructions given at the request of the defendant are inconsistent with this view of the law, and should not be given on a new trial.

As to the measure of damages: If the deposit was oc-

casioned by the negligence of the defendant in allowing the trestle to be obstructed, and could have been prevented by keeping it open to the extent its duty required, then we think that each failure to allow the flood-waters to pass ·constituted a nuisance, and each recurring damage to the crops thereby furnished a new cause of action. *Chicago, B. & Q. R. Co. v. Emmert,* 53 Neb. 237; *Chicago, R. I. & P. R. Co. v. Andreesen,* 62 Neb. 456; *Chicago, B. & Q. R. Co. v. Mitchell,* 74 Neb. 563; *Morse v. Chicago, B. & Q. R. Co.,* 81 Neb. 745; *Reed v. Chicago, B. & Q. R. Co.,* 86 Neb. 54. Unless the filling of the Spalding land lying between the outlet and plaintiffs' lands was occasioned by obstructions negligently permitted to remain at the trestle, defendant is not liable either for damages to the crop or damages to the land; but, if the Spalding land was filled as a result of negligent obstructions to the waterway, then we think the rule stated in the foregoing cases applies.

Defendant also complains that the plaintiffs were permitted to amend their reply so as to allege an agreement by one Hill, defendant's claim agent, made in 1906, after the flood of that year, that the defendant would promptly replace a portion of the trestle with a steel span about 60 feet long, and would ditch and otherwise prepare the land north of the trestle so as to properly drain the plaintiffs' lands, and that in planting the crops in 1907 and 1908 they relied upon this agreement. This amendment was intended as a defense to the allegations of the answer that when these crops were planted the plaintiffs knew the condition of affairs and took the risk. The testimony of Mr. Gray substantially corresponds with this allegation, although the promise is denied by Mr. Hill. We believe the testimony as to the promise to open the waterway and ditches so as to drain the land was connected with the subject with which Hill was authorized to deal, and was properly admissible as excusing the plaintiffs for planting the crops as conditions then existed, and, of course, in proving this the whole statement was narrated. It was

really immaterial whether a new steel span was to be put in or not; the controversy is as to whether there was a promise to open the waterway so as to justify the planting of crops.

In this connection certain correspondence was received over defendant's objection, ostensibly for the purpose of showing a ratification by the defendant of the alleged promise by its agent Hill to erect a new steel span. Exhibit 35 is a letter from Gray to the claim agent describing the flood, making a claim for damages and giving his idea of the cause. It makes no reference to any agreement for a new bridge. Exhibits 36, 37 and 38 merely acknowledge the receipt of the letters by Gray. Exhibit 40 promises an investigation, and says: "If we find that any of this damage is due to lack of waterway, the necessary steps will be taken to remedy the trouble." The remaining letters throw no further light upon the agreement and ratification than do those mentioned. We cannot see that they afford evidence of ratification of the alleged promise made by Hill, and think they should not have been admitted in evidence.

Defendant insists that the evidence of the engineers produced by it as witnesses and also the elevations shown on the various plats introduced by both plaintiffs and defendant conclusively established that obstructions of the trestle were not the proximate cause of the injuries, and that the court should have directed a verdict in its favor. We find, however, testimony on behalf of plaintiffs to the contrary by the witness Johnson, who also is an engineer, and by other witnesses. While we might have taken a different idea had we tried the question, we believe there is sufficient evidence to warrant the submission of the real issues to a jury. If a new trial is had, the issues should be narrowed and clearly presented both in the pleadings and instructions. We feel it our duty to repeat what has frequently been said by this court, that instructions should reflect the real issues, and that if the evidence clearly fails to sustain an issue, or if either party virtually abandons

one or more of the contentions on which he relies, that issue, or that contention, should not be submitted, even though it is made in the pleadings; that the charge should be as brief, clear and connected as may be and at the same time fully and fairly submit the true issues involved, without undue repetition, since it is difficult enough at the best for one unused to the technical phraseology of the law to clearly grasp the meaning of stiff and formal written instructions.

What has been said with reference to the main question being whether or not obstructions to the flow of water through the trestle negligently made caused the damage is not intended to mean that other questions involved which we have not mentioned may not properly be issues in the case. It is impossible, with due regard to the right of other litigants, to extend this opinion so far as to cover every point involved.

The judgment of the district court is reversed and the cause remanded.

REVERSED.