CORBIN v. BOOKER. (No. 534.)*

(Court of Civil Appeals of Texas. El Paso. March 16, 1916. Rehearing Denied April 6, 1916.)

1. APPEAL AND ERROR ⊜⇒931(3)—REVIEW—PRESUMPTIONS.

Where no findings of fact were filed in the trial court, an appellate court must assume that all issues of fact properly arising were resolved in favor of the appellee.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3764; Dec. Dig. ⊜⇒931(3).]

2. CONTRACTS ⊜⇒147(2)—CONSTRUCTION—INTENTION OF PARTIES.

The governing principle in the construction of contracts is that they are to be expounded in accordance with the intention of the parties, to

be ascertained from the writing itself when its meaning is clear.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 730; Dec. Dig. ⊜147(2).]

3. EVIDENCE ⊜448 — PAROL EVIDENCE AFFECTING WRITINGS—CONSTRUCTION OF CONTRACT.

Where a written instrument is uncertain in meaning and its language ambiguous, or of doubtful construction, the intention of the parties must be obtained by proof aliunde.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. ⊜448.]

4. CONTRACTS ⊜170(1) — CONSTRUCTION — PRACTICAL INTERPRETATION.

Practical interpretation placed by the parties themselves on a contract of doubtful meaning is entitled to great, if not controlling, influence.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. ⊜170(1).]

5. EVIDENCE ⊜450(4)—PAROL EVIDENCE AFFECTING WRITINGS.

Under a contract of assignment of a lease and option to purchase land, providing that the assignor agrees to proceed at once to survey and establish the exact boundary lines within three years from April 20, 1910, it cannot be determined from the language of the contract itself whether the assignor was obligated to proceed at once or could do so within the three-year period.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2070; Dec. Dig. ⊜450(4).]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by W. D. Corbin against L. E. Booker. From a judgment for defendant, plaintiff appeals. Affirmed.

C. L. Galloway and C. L. Vowell, both of El Paso, R. V. Bowden, of Los Angeles, Cal., and J. D. Wendorff, of Kansas City, Mo., for appellant. Turney & Burges and T. A. Falvey, all of El Paso, for appellee.

HIGGINS, J. On April 20, 1910, in Chihuahua, Mexico, certain parties, who will be hereinafter designated as the "Muller heirs," entered into a written contract with L. E. Booker which reads:

"First. The Mesdames Douglas and Dominguez, and the Messieurs Gameros (Manuel, in representation of his daughter) declare that they are the owners of the hacienda named 'Santa Ana del Torreon' situated in the municipality of San Buenaventura, district of Galeana, in this state, and having the following boundaries: North, lands of Luis Terrazas, and the Corralitos Company; south, lands of Francisco A. Prieto and Jose Prieto Varela; east, lands of Luis Terrazas; and west, lands of Colonia Dublan, George Look and Luis Terrazas.

"Second. Mesdames Douglas and Dominguez, and Messieurs Manuel and Enrique Gameros (the former in representation of his minor daughter, and the latter in his own name) have this day leased to Lewis E. Booker the 'hacienda de Santa Ana de Torreon' described in the foregoing clause, for the term of three years in the sum of ten thousand pesos for the first year, thirteen thousand pesos for the second year and sixteen thousand pesos for the third year, payable annually in advance; the lessors hereby acknowledging the receipt of the first year's rent.

"Third. The lessors herein obligate themselves to proceed at once to identify the exact boundary lines of the before mentioned hacienda de Santa Ana de Torreon, and within the term of three years to establish the correct lines or boundaries of the property in such manner as to leave no question or doubt whatever.

"Fourth. The lessors are herein obligated to sell to L. E. Booker and he, in turn, is obligated to buy the before mentioned hacienda with its extensions which within three years can be so delivered without question, in the sum of fifteen thousand pesos for each one thousand seven hundred and fifty hectaras sixty one aras; said sum to be paid in four equal annual payments in cash, interest at six per centum per annum, counting from the date of sale.

"Fifth. In case the boundary lines are established in such a manner that there is no question of their correctness within the life of this contract, the lessors shall give the lessee, L. E. Booker, six months' notice for the first payment which would fall due under a bill of sale for the property.

"Sixth. Mr. L. E. Booker accepts this contract under the conditions herein set forth."

In May, 1910, a preliminary contract was entered into between Booker and W. D. Corbin, whereby it was agreed that Booker would assign to Corbin his rights under above-mentioned contract. It was agreed that Corbin would pay Booker for this assignment the sum of 28 cents per acre on an estimated acreage of 200,000 acres, making a total of approximately $56,000 and the further sum of $5,000 as a refund for the 10,000 pesos paid by Booker to the Muller heirs for the first year's rent.

On August 22, 1910, Booker and Corbin reduced their agreement to writing; the same reading:

"That, whereas, said Booker on the 20th day of April, 1910, entered into a certain contract with Mesdames Enriqueta Muller Douglas, Maria Muller Dominguez, with the consent of Eduardo Douglas and Augustin Dominguez, their respective husbands, and Messrs. Manuel Gameros legal representative of his minor daughter, Elisa, and Enrique Gameros, which said contract constituted a lease and an agreement to sell the certain ranch or hacienda named 'Santa Ana de Torreon' to Lewis E. Booker; copy of said contract is hereto attached, marked 'Exhibit A,' and made a part of this contract: Now, therefore, for and in consideration of the sum of five thousand ($5,000.00) dollars Mexican currency paid said Booker by said Corbin, receipt of which is hereby acknowledged, and the assumption by said Corbin of any and all obligation of the aforesaid contract, said Booker hereby agrees and does hereby assign, sell, set over, transfer and deliver unto the said Corbin all of his right, title and interest in and to said contract, copy of which is hereto attached, marked 'Exhibit A.'

"Said Booker further agrees to proceed at once to survey, establish and identify, or cause to be surveyed, established or identified, the exact boundary lines of the above-mentioned ranch or hacienda de Santa Ana de Torreon within the period of three (3) years from and after the 20th day of April, 1910, to survey, establish and identify or cause to be surveyed, established and identified the correct lines or boundaries in such manner as to leave no question or doubt whatever about the same. Said Booker hereby agrees and guarantees that the east boundary line of said land shall be east of all and every part of the valley land of said tract of land and east of all springs arising upon said land, and the south boundary line of said tract of land shall be south of all springs arising upon

said tract of land above mentioned, as indicated and designated by the ancient monuments marking the east and south boundary lines of said tract of land as pointed out by one Thomas Bailey, acting as agent for the said Booker for the purpose of pointing out said boundary line.

"Said Booker further agrees that in the event any portion of the lands lying within the boundary lines above described and particularly that certain 2¾ sitios of land lying adjacent to and within the lands which extend one league north, one league east, one league south and one league west from the church, in the Municipality of Galeana, shall be adjudged to be the property of the parties other than the parties of the first part to the contract with said Booker, copy of which contract is hereto attached marked 'Exhibit A' then and in that event said Booker agrees that he will acquire the title to said 2¾ sitios of land and cause the same to be at once transferred to the said Corbin at the same price per acre as specified in said contract of said Booker, copy of which is hereto attached, marked 'Exhibit A.'

"Said Booker hereby further agrees that immediately upon the signing of this contract he will cause to be delivered to said Corbin the free and exclusive possession of the entire tract of land contemplated in this contract, and said Corbin is to have the free and exclusive use, occupancy and possession of the same from and after the signing of this contract.

"Said Booker guarantees that said parties of the first part to said contract, copy of which is hereto attached, marked 'Exhibit A' will faithfully comply with all the terms and conditions of said contract on their part, and upon said Corbin complying with all the terms of said contract upon his part, the said Booker will cause said lands contemplated in this contract to be conveyed to said Corbin by a good, sufficient and legal warranty deed, and said Booker further agrees that the title to said land so conveyed as aforesaid to said Corbin shall be clear and free from all encumbrances whatsoever and that said Booker will warrant and forever defend the title to said Corbin to said lands against all claims and demands of every nature and kind whatsoever, except taxes.

"It is further hereby stipulated and agreed that any suit or suits for the violation of any term or terms of this contract may be instituted and prosecuted by either party to this contract in any court of competent jurisdiction either in the Republic of Mexico or the United States of America."

On August 23, 1910, Booker and Corbin entered into another contract, reading:

"That whereas, on the 22d day of August, A. D. 1910, said parties hereto entered into a contract which, among other things, constituted an assignment of a certain lease and option to purchase a certain tract of land known as ranch or hacienda de Santa Ana de Torreon, situated in the municipality of San Buenaventura, district of Galeana, state of Chihuahua, Republic of Mexico, and that in said contract said Booker agreed that in the event any portion of that certain 2¾ sitios of land lying adjacent to the district of Galeana and within the land which extends one league north, one league south, one league east and one league west from the church, in the district of Galeana shall be adjudged to be the property of parties other than the parties of the first part in said contract with said Booker dated the 20th day of April, A. D. 1910, then and in that event, said Booker would cause said lands to be transferred to said Corbin: Now, therefore, in the event that said Booker is compelled to purchase any portion of that certain 2¾ sitios of land lying adjacent to the district of Galeana and within the lands which extend one league north, one league south, one league east and one league west from the church, in the district of Galeana from parties other than those mentioned in his said contract for the purchase of lands dated April the 20th, A. D. 1910, said Corbin will within sixty days after being notified in writing by said Booker that he has a contract of purchase of said lands with the title to the same approved by J. N. Amidor, pay to said Booker twenty per cent. (20%) of the purchase price of said lands as provided in said contract dated April 20th, A. D. 1910, and said Corbin shall have free and absolute possession of said lands from and after the time of payment of said 20% of the purchase price as aforesaid, and the balance of said purchase price shall be paid said Booker within six months from the date of said notification and said Booker hereby guarantees that said land shall be conveyed to said Corbin at the time said Corbin pays the balance of said purchase price as herein provided."

In the contract between Booker and Corbin, dated August 22, 1910, it is recited that the consideration for Booker's assignment to Corbin of his rights under the contract of April 20, 1910, is the sum of $5,000 Mexican currency. It is admitted this did not truly state the consideration, and that the true consideration was the sum of approximately $56,000 upon the estimated acreage and $5,000 to reimburse Booker for the first year's rent paid by him.

Corbin paid a part of the consideration which he contracted to pay to Booker and has failed to pay the balance. He gave a note to cover such balance, which was accepted by Booker, but same has never been paid. On December 21, 1911, Corbin filed this suit against Booker to recover the moneys paid by him to Booker on account of the contract between them and to cancel the note given by him as above stated; also, to recover certain moneys by him expended and for profits which he averred he had lost by reason of Booker's failure to perform his obligations under their contract. In effect, the suit is for a rescission of the contract and to restore to Corbin all moneys which he had expended and profits lost.

It is contended that Booker breached his obligation with reference to surveying, establishing, and identifying the boundaries of the hacienda and delivery of possession.

[1] Upon trial before the court, judgment below was rendered in Booker's favor. There being no findings of fact filed below, this court must assume that all issues of fact properly arising were resolved by the court in Booker's favor.

The vital points raised by this appeal, and upon which all of the questions in the case turn, are well stated by appellant in this language:

"(1) Was the defendant required, under the terms of the contract, to begun surveying immediately after the signing of said contract, and continue until what could then be done was done, and complete the surveys covering the disputed lands as they were adjusted within the three years, or did he have the right at his option to begin the surveys at any time he chose within the said period of three years, provided he completed the same within said period?

"(2) If, under a proper construction of the contract, the defendant had not breached the

provisions relative to surveys at the time suit was filed, then the next question is whether or not he had breached the provision of the contract relating to the giving possession of said ranch to plaintiff at the time suit was filed.".

[2-4] Booker's obligation with respect to surveying, establishing, and identifying the boundaries of the hacienda is not clearly stated in the contract of August 22, 1910. In this respect, it is ambiguous and of doubtful construction. The uncertainty of meaning is not relieved by the contract of April 20, 1910, in connection with which it should be construed. The governing principle in the construction of contracts is that they are to be expounded in accordance with the intention of the parties. The intention of parties to a written contract must be ascertained from the writing itself when its meaning is clear. But where the instrument is uncertain in meaning, and its language ambiguous or of doubtful construction, the intention of the parties must be obtained by proof aliunde. Under such circumstances, resort may be had to the surrounding facts and circumstances connected with its execution as would tend, not to contradict the terms of the instrument, but to explain its purpose and meaning, in order to arrive at the true intent of the makers. And the practical interpretation placed by the parties themselves upon a contract of doubtful meaning is entitled to great, if not controlling, influence. In an executory contract of this nature, and where its execution necessarily involves a practical construction, if the minds of both parties concur in a construction, there can be no great danger in the adoption of it by the court as the true one.

[5] In the case at bar, it is admitted that Booker did not at once proceed to survey, establish, and identify the boundaries of the hacienda, or cause the same to be done, and had not done so at the time plaintiff filed his suit. He contends that he could do this at any time within the period of three years from and after April 20, 1910. There seems to be no controversy that there was ample time to do this within the three-year period if Booker's contention is correct. It is impossible to determine from the language itself whether Booker was obligated to at once proceed to survey, establish, and identify the boundaries, or could do so within the period of three years from and after April 20, 1910. Appellant seems to concede the doubtful import of the contract in this respect, as he argues that the surrounding facts and circumstances show it was the intention of the parties that Booker should at once proceed to do so. Under the rules of interpretation to which allusion has been made, the evidence is clearly sufficient to support a finding that the intention of the parties was as contended by Booker.

As to possession, the evidence shows that Corbin was in possession through his tenants and representatives. Rentals were collected for his account from various tenants. He made several trips to the land. Several parties of prospective purchasers were sent by him to view the land, and he seems to have had as complete possession as he desired.

So, upon both phases of the case, Booker was not in default when the suit was filed, and recovery back of the moneys which Corbin had paid was properly denied. It will serve no purpose to detail the evidence upon the two vital issues in the case. It was abundantly sufficient to warrant the trial court in resolving both issues against appellant. Long subsequent to August 22, 1910, Corbin was expressing to Booker his appreciation of and satisfaction with Mr. Booker's treatment of him. Said he had never done business with a man who seemed to want to be as fair as Booker. He was justifying his failure to make the payment of the $61,000 which he had agreed to pay by the financial situation and his inability to procure the money. It is plainly inferable from all the testimony that the revolutionary conditions which arose in this portion of Mexico in the year 1911, destroying the value of Corbin's rights under the assignment of the contract of April 20, 1911, coupled with inability to pay the balance due Booker, was an important and probably controlling factor in prompting Corbin to seek a rescission of his contract with Booker, rather than any breach thereof upon Booker's part.

Chief Justice HARPER concurs in the disposition made of this appeal. He is of the opinion that the contract of August 22, 1910, must be construed in connection with the Booker-Muller contract, because it was simply an assignment by Booker of his rights, under his Muller contract, and it so stipulates in unquestioned terms.

The Muller contract only provided that the boundaries were to be identified and established within three years, and the only additional provision, if it is additional, in the Corbin-Booker contract, is that Booker agrees to survey. The only thing of doubtful import in these two contracts is the expression "proceed at once," and when this is read in the light of the Booker-Muller contract, that is, the lands were in no event to be deeded until the expiration of three years, it is apparent that either party, the Mullers or Booker, had the entire three years in which to perform that part of the contract. For, until the time came to pass title by executing deeds, there was no necessity for identification by field notes. At least, there is nothing in the writings themselves to indicate that there was any reason for surveying the lands any sooner than was necessary to have field notes for the end.

But if the contracts are ambiguous, as seems to be conceded in respect to the time when the parties were to begin to survey, identify the boundaries, etc., there is no doubt that both contracts provide that the

grantors shall have the full period of three years in which to do it. Then what value would it be to appellant for the Mullers or Booker to "begin at once" if they have full three years to complete the survey? Clearly, the matter of the time for beginning the survey was of no consequence—so that it was done in time for the deeds.

Finding no error, the judgment is affirmed.