HARRY CONLEY, DOING BUSINESS UNDER THE TRADE NAME OF HARRY CONLEY COMPANY, APPELLEE, v. RUSSELL HAYS, APPELLANT.

45 N. W. 2d 900

Filed February 9, 1951. No. 32846.

 

*Kepler & Knicely, J. Murray Palmer,* and *Cline, Williams & Wright,* for appellant.

*Martin & Davis,* and *Fitzgerald & Smith,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Harry Conley, doing business as Harry Conley Company, plaintiff and appellee, against Russell Hays, defendant and appellant, to recover $18,000 paid by plaintiff to the defendant on a written contract of purchase of 9,000 to 9,500 lambs.

By written agreement the defendant agreed to sell to plaintiff from 9,000 to 9,500 lambs at a stipulated price per hundred pounds and plaintiff agreed to and did make a down payment of $18,000 as a part of the purchase price. The defendant tendered delivery of the lambs and actually produced for delivery a portion of the lambs which delivery was refused by plaintiff on the ground that the lambs were not of the kind and quality required under the contract. The action is to recover the down payment.

The case was tried to a jury. The jury returned a verdict in favor of the plaintiff and on this verdict judgment was entered. From this judgment and the order of the court overruling a motion for new trial which motion was duly filed the defendant has appealed.

Numerous assignments of error appear in the brief as grounds for reversal. However all of them do not require separate consideration here. The first four must stand or fall with the adjudication upon those which follow. The next three deal with a single subject and

because thereof may be considered as a single proposition. Their gist is a contention that the court erred in admitting parol evidence the effect of which was to permit the written contract of sale of the lambs to be changed, modified, altered, or explained.

In order that an understanding may be had of the controversy presented by this appeal it becomes necessary to set out some of the background as it is disclosed by the record. On August 4, 1948, a written contract was entered into on behalf of the parties hereto for sale by defendant to plaintiff of from 9,000 to 9,500 lambs to be delivered f.o.b. cars at Farmington, New Mexico, between October 15 and November 1, 1948. The price was to be $24 per hundred pounds. The down payment was $18,000. The lambs to be delivered were described in the contract as follows: "These Ramboulet (Rambouillet) lambs & Cross Breed lambs to be weighed up with 3% or 12 hr sh—9000 will be delivered on this Contract & 9500 if grower has them Said lambs to bear ear marks and brands as follows: These are the McGee Bros. lambs. lambs to ave—65# or better." The abbreviation "sh" means "shrink" and "to ave" means "to average."

Pursuant to the terms of the contract, late in October the defendant offered for delivery lambs in the amount of 6,000 to 6,500. The plaintiff through his agent refused to accept the sheep. The reasons for refusal to accept them were that they were not of the kind and quality contemplated by the contract, and that they were not free from disease, that is they had "sore mouth." Whether or not "sore mouth" when referred to in connection with lambs is a specifically recognized disease is not made known by the record.

The contention of the plaintiff is that the lambs were not the Rambouillet or cross-breed lambs contemplated by the contract but were what are known as Navajo lambs which were raised by Indians on the Navajo res-

ervation and were of an inferior kind and quality to those required by the terms of the contract.

On the issues made by the pleadings on the trial of the case the plaintiff was permitted to prove by parol evidence that the lambs offered for delivery were Navajo lambs and that they were of a kind and type other and different from Rambouillet and cross-breed lambs as described in the contract.

It is this evidence that the defendant asserts by his 5th, 6th, and 7th assignments of error was erroneously admitted. He says that the contract is full, complete, clear, and unambiguous and that parol evidence may not be resorted to to change, modify, alter, or explain it.

There is and can be no difference of opinion that where a written contract is clear and specific in its terms and without ambiguity, in the absence of fraud, accident, or mutual mistake, it may not be changed, altered, or modified by parol evidence. The following are a few of the many cases from this jurisdiction and from the state of Texas, the place where the contract was entered into, making this point clear. Sturm v. Lloyd, 130 Neb. 89, 264 N. W. 150; Weidenfeld v. Olson, 132 Neb. 303, 271 N. W. 806; Martin v. Hemphill (Tex.), 237 S. W. 550; Distributors Inv. Co. v. Patton, 130 Texas 449, 110 S. W. 2d 47.

Fraud, accident, and mutual mistake have not been pleaded or relied upon by plaintiff as a basis for the rejection of the lambs, therefore these elements are not presented for consideration herein.

The contention of the plaintiff is that the parol evidence adduced by him was not admitted in violation of this rule but that it was properly admitted in explanation and interpretation of the meaning and what the parties intended to be the meaning of the descriptive term "Ramboulet (Rambouillet) lambs & Cross Breed lambs" appearing in the contract. In other words he says substantially that the true meaning and the one intended does not flow from the descriptive words themselves,

therefore it is proper and not a violation of the parol evidence rule to allow the true meaning to be exposed to the court and jury by evidence of the parol statements of the parties or their representatives at and prior to the signing of the contract explanatory thereof and other parol statements also explanatory thereof.

Factually the plaintiff was permitted to prove that the lambs tendered for delivery were Navajo lambs and that they did not fall into either the classification of Rambouillet or cross-breed lambs. He was also permitted to show that in the conversations leading up to the signing of the contract there was an expressed understanding that the description excluded Navajo lambs. He was permitted to show that Rambouillet was a recognized breed of sheep and that there were other recognized breeds, and that Navajo had no recognition as a breed.

As to cross-breed he was permitted to show that by that term was meant the offspring of a cross between two recognized breeds of sheep, and incidentally that Navajo lambs were inferior in quality to either Rambouillet or cross-breed lambs.

As against this the defendant adduced evidence substantially that there were no sheep known as Navajo sheep; that the Indians on the Navajo reservation raised sheep; that from the known beginning the sheep were not identifiable with any recognized breed; that the sheep on the reservation were inbred but for a long time the United States government and traders brought in males of the Rambouillet breed and other recognized breeds for breeding purposes; that a cross-breed lamb included the offspring of cross-breeding between two recognized breeds of sheep as well as between a recognized breed and the sheep produced on the reservation; that these were a cross between recognized breeds and such unrecognized and reservation sheep; and that the lambs produced on the reservation pursuant to this custom were as good as any other and that the lambs offered

for delivery were as good in quality as any others produced in the area and not on the reservation. There was evidence that to make effective cross-breeding between the sheep on the reservation and the imported males it was the custom to castrate the lambs produced on the reservation.

The district court obviously admitted this evidence not on the theory that it tended to change, alter, or modify the terms of a written contract but on the theory that it was in explanation and interpretation of terms which were indefinite and uncertain. Hence it became proper in explanation of the terms to resort to the conversations of the parties had at and prior to the time the contract was entered into, and the testimony of persons having peculiar knowledge the exposition of which tended to make clear the indefinite and uncertain terms contained in the contract.

Under the decisions of this court and of the courts of the state of Texas it is proper to admit parol evidence in explanation and interpretation of the terms of a written contract which are indefinite and uncertain. The rule and the reasons therefor appear in the following cases: Myers v. Persson, 94 Neb. 467, 143 N. W. 447; State v. Commercial Casualty Ins. Co., 125 Neb. 43, 248 N. W. 807, 88 A. L. R. 790; Helfrich v. Baxter, 131 Neb. 285, 267 N. W. 922; Fitzsimons v. Frey, *ante* p. 124, 43 N. W. 2d 531; Corbin v. Booker (Tex. Civ. App.), 184 S. W. 696; San Antonio Life Ins. Co. v. Griffith (Tex. Civ. App.), 185 S. W. 335. Numerous cases from other jurisdictions are to the same effect.

We conclude that the district court committed no error in the admission of the parol evidence concerning which complaint is made.

The parol evidence in this respect was substantial and it cannot be said that it did not have probative value. Therefore it is beyond the province of this court to say that it was insufficient for the purpose for which it was admitted.

In an appeal in a jury case the function of the Supreme Court is not to weigh the evidence but only to determine whether or not there was sufficient evidence to sustain the verdict, and if the evidence is substantial and competent but in conflict and is such that reasonable minds may draw different conclusions therefrom, the verdict of a jury will not be set aside. Dischner v. Loup River Public Power District, 147 Neb. 949, 25 N. W. 2d 813; Bendfeldt v. Lewis, 149 Neb. 107, 30 N. W. 2d 293; Albers v. Ziegler, 151 Neb. 408, 37 N. W. 2d 590; Sorter v. Citizens Fund Mutual Fire Ins. Co., 151 Neb. 686, 39 N. W. 2d 276.

The next assignment is that the court erred in admitting over objection testimony of Guy Forsling which was prejudicial to the defendant. This assignment is without merit. As to this witness, in appellant's brief, it is said: "Yet, he was permitted to describe in detail the alleged deficiencies and shortcomings of Navajo lambs, and with particularity, those that he said he had seen in Kimball County in 1948 or 1949. All of this was over objections, strenuously made, that 'what he saw in Kimball County is wholly immaterial to this case.' "

If the purpose of this is to say that all of the evidence as to the deficiencies and shortcomings of Navajo lambs was strenuously objected to then the assertion is contrary to the record since all that this witness said generally descriptively of Navajo lambs went into the record without objection. If the intent and purpose was to say that the portion relating to lambs seen by the witness in Kimball County was objected to then in the light of the record no valid ground for complaint appears. At the close of the trial this testimony was on motion of defendant with consent of plaintiff stricken and the jury instructed to disregard it.

The general rule in such situations, which general rule rather than any exception thereto we conclude should apply, is that where evidence improperly received is

afterwards stricken out, and expressly withdrawn from the jury, error involved in its reception is ordinarily cured. Bush v. James, 152 Neb. 189, 40 N. W. 2d 667.

The next assignment to be considered is that the trial court failed to instruct that it was not necessary for the defendant or McGee Brothers to have owned the lambs involved in the suit at the time of the execution of the contract, on August 4, 1948.

It is true that in the petition on which the case was tried the plaintiff declared that the defendant failed to make delivery of lambs called for by the contract but instead attempted to make delivery of Navajo lambs infected with serious disease and which were not grown and raised by the McGee Brothers nor owned by the McGee Brothers on August 4, 1948. However on the trial of the case the question of whether or not the lambs were grown, raised, or owned by McGee Brothers on August 4, 1948, formed no part of plaintiff's right of recovery. He sought to recover solely on the theory that the lambs offered were not such as were contemplated by the contract and that they were diseased. The case was thus submitted without objection on the part of the defendant.

The matter of ownership on August 4, 1948, not having been an issuable matter, it was not incumbent on the court without request to give any instruction in relation thereto. The appropriate rule under such circumstances is the following: In a case where no attempt is made to prove certain allegations, and the plaintiff abandons them as a ground of recovery, the issues as to such matters should be eliminated from the charge. Gray v. Chicago, St. P., M. & O. Ry. Co., 90 Neb. 795, 134 N. W. 961; Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W. 2d 114.

A more serious question however arises in relation to the subject of ownership of lambs on August 4, 1948, under another assignment of error. The trial court copied literally in the instructions the pleadings of the

parties, a practice which has been repeatedly condemned. McClelland v. Interstate Transit Lines, 139 Neb. 146, 296 N. W. 757; Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597; Melcher v. Murphy, 149 Neb. 541, 31 N. W. 2d 411; Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501. The defendant assigns this as error.

As has been pointed out the plaintiff pleaded as a part of his cause of action that the lambs offered were not grown or raised by the McGee Brothers, nor owned by the McGee Brothers on August 4, 1948. Also as pointed out, on the trial of the case these matters were not presented as issuable matters, yet the trial court after hearing all of the evidence presented them as issuable. Clearly this was error and this situation presents graphically the basis for condemnation of the practice of copying the pleadings of the parties in the instructions.

It now becomes the duty of this court in the light of this obvious dereliction of the district court to attempt to ascertain whether or not the error was one which prejudiced the defendant, an ascertainment which never can depend upon certainty since it is obviously impossible to discern what in any set of instructions may have influenced or controlled the minds of the jury.

In an obvious effort to avoid the error involved in the condemned practice of copying the pleadings in the instructions, the court gave the following instruction: "The above and foregoing is merely a statement of the nature of the case and must not be considered by you as evidence of anything therein contained or as having anything to do with the law of this case, but merely for the purpose of giving you an idea of the nature of the case."

Clearly on its face this instruction failed to remove from the jury the question of production of the lambs by McGee Brothers and ownership thereof by them on August 4, 1948. In this connection it is pertinent to

note that the record discloses that none of them were produced by McGee Brothers. The evidence discloses that at some time they came to McGee Brothers by purchase from Indians but at what time or times was not made known or attempted to be made known on the trial.

This instruction left these two questions as issuable matters. The first tangible effort to remove them appears in the sixth instruction. This instruction defines the plaintiff's burden of proof. In this instruction the jury was told in accordance with the theory of the trial that the burden was on plaintiff to prove "that said lambs were to be ramboullet (Rambouillet) lambs and cross-bred lambs, said lambs to be McGee Brothers lambs, delivered to the railroad at Farmington, New Mexico."

Without any recession from the previous condemnation of the practice of copying pleadings in instructions and with a renewal of insistence that the statements of issues to juries should contain only issuable matters which find support in the evidence, we conclude in the light of the theory on which the case was tried, in the light of the instruction regarding plaintiff's burden of proof, and in the light of the failure of the defendant to request an instruction that it was not necessary to his defense that the lambs should be shown to have been produced by McGee Brothers or owned by them on August 4, 1948, that the copying of the pleadings in this action was without prejudice. This conclusion effectually disposes of an assignment charging that the court erred in failing to instruct on the issues as shown by the pleadings and evidence.

In another assignment the defendant contends that the court erred by permitting testimony on rebuttal that plaintiff purchased other lambs after October 25, 1948.

This assignment is without merit unless it may be said that the evidence that it counteracted was inadmissible.

The briefs do not and we are not prepared to so treat it.

It is a rule that where inadmissible evidence is allowed to be introduced on one side, similar evidence is not admissible in rebuttal. Dodge v. Kiene, 28 Neb. 216, 44 N. W. 191; McCartny v. The Territory of Nebraska, 1 Neb. 121.

Another rule is that the plaintiff in an action may meet by rebuttal evidence any admissible evidence adduced by the defendant by evidence which is not a part of the evidence of the plaintiff in chief. McCleneghan v. Reid, 34 Neb. 472, 51 N. W. 1037; Clarke v. Van Court, 34 Neb. 154, 51 N. W. 756; McClellan v. Hein, 56 Neb. 600, 77 N. W. 120; Campion v. Lattimer, 70 Neb. 245, 97 N. W. 290; City of McCook v. McAdams, 76 Neb. 1, 106 N. W. 988, 114 N. W. 596.

The rebuttal evidence to which this assignment refers was in rebuttal of evidence received on behalf of the defendant the effect of which is to say that the motive of the plaintiff in rejecting the lambs was not that they did not meet the requirements of the contract but that the market price of lambs had dropped between August 4, 1948, and the time of offered delivery. The effect of the rebuttal evidence was to say that no such motive existed since plaintiff actually purchased other lambs after October 25, 1948, at a price in excess of the market. Under the circumstances and within the limits for which this evidence was adduced it cannot be reasonably said that the defendant was prejudiced.

The only remaining assignment not referred to or discussed is one which asserts that the verdict was the result of passion and prejudice. The gist of the complaint is that the testimony as to the Navajo lambs was inadmissible and being so inadmissible it was inflammatory and calculated to arouse passion and prejudice in the minds of the jury.

In the consideration of other assignments it was determined that this evidence was admissible in explanation

and interpretation of the contract. The assignment here is necessarily without merit.

The judgment of the district court is affirmed.

AFFIRMED.