CARLTON D. HUTCHINSON, ADMINISTRATOR, APPELLEE, V. WESTERN BRIDGE & CONSTRUCTION COMPANY, APPELLANT.

FILED DECEMBER 18, 1914.  No. 17,902.

1.  **Appeal: EXCESSIVE VERDICT: REVERSAL.**  Where it is evident that, in fixing the amount of the verdict, the jury disregarded the instruction of the court as to the basis of recovery, and the verdict is so excessive that it must have been the result of passion or prejudice, the judgment will be reversed.

2.  **Trial: INSTRUCTIONS: STATEMENT OF ISSUES.**  Where a petition contains allegations of fact not supported by any evidence, it may be reversible error to include such statements in that part of the charge of the court defining the issues to be tried, and, if the reviewing court is satisfied that the jury has been misled by so doing, it will be its duty to grant a new trial.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE.  *Reversed.*

*Mahoney & Kennedy, M. F. Harrington* and *H. G. Moorhead,* for appellant.

*Crane & Boucher* and *J. W. Woodrough, contra.*

LETTON, J.

Plaintiff is administrator of the estate of Charles B. Harris, deceased.  The action is to recover damages to the next of kin by reason of the death of Harris while in the employment of defendant.

On the 25th of April, 1910, the deceased, with another workman, and a foreman were driving piles with an ordinary pile driver, operated by horse-power, on the premises of the Union Refining Company in Omaha.  After a pile

had been driven it was necessary to move the pile driver to the place where the next pile was to be driven. When moving the machine it was customary to lower the hammer. At the time of the accident the hammer, together with another ponderous piece of iron, called the "follower," rested upon a piece of yellow pine scantling 2x4 inches in size, set on edge at a height of about 6 or 8 feet above the sills. This "toggle-bar," as it was called, rested upon the framework between the uprights or "leaders." The apparatus was large and top-heavy, and in moving it upon gas-pipe rollers under the sills it was necessary to use a crowbar as a lever at different points upon the sills to force or "pinch" it forward and in order to straighten its course. The span of the bar between the horizontal timbers on which it rested was about 17 or 18 inches. The hammer was about 16 inches wide, and the hammer and follower together weighed about 2,000 pounds. While moving the pile driver, Moore, the other workman, who was loosening one of the guy ropes and looking up at the rope, saw Harris pass close by him with a crowbar in his hand. In a moment afterwards he heard the breaking of the toggle-bar and the fall of the weight and saw Harris lying with his head under the hammer. He was instantly killed. The negligence alleged is the failure to supply a sufficient and adequate toggle-bar to hold up the weight; that the toggle-bar was of soft pine, weak and knotty, which, though it might hold up the weight while the machine was absolutely quiet, was, as the defendant knew, totally inadequate to sustain the weight during the process of moving the machine. The answer pleads contributory negligence and assumption of risk, and that Harris voluntarily placed himself in a position of obvious danger not within the scope of his employment. A verdict for $10,000 was returned by the jury, on which judgment was rendered.

The verdict is said to be so excessive that it must have been the result of passion or prejudice.

A few years before Harris had lived in North Dakota with his wife and three children, two sons and a daughter. The wife died. The family was kept together for a short

time with a housekeeper, but it separated in the autumn of 1909; the oldest son and the daughter going to live with an uncle in Wisconsin, and the father and younger son coming to Nebraska. In North Dakota Harris had been a tenant farmer, and between seasons had laid cement sidewalks. After coming to Nebraska he followed the same avocations for a time, but had worked for defendant with his team for over five months. The proof as to his earning capacity is not very clear. At the time of his death he owned a two-horse team, wagon and harness, and perhaps a little money; but it is shown that his work was irregular, that, though not a drunkard, he used liquor frequently, and it is not shown after he came to this state that he earned more than enough for his own maintenance, the keep of his team, and such sums as he was contributing to his children. At the time of his death Harris was 43 years old. Harry, the older son, was between 19 and 20; Homer, the younger son, over 18; and Dolly, his daughter, was 15 years of age. The older son testified that before leaving North Dakota he worked for his father; that he was strong and able-bodied, and that after he went to Wisconsin he was self-supporting, although he received money from his father a few times in small amounts. The second son testified that after he came to Nebraska his father did not furnish him any money; that he was and had been self-supporting, and that for the last two years he had been earning $60 a month. Harris paid $2.50 a week for the board of his daughter, and sent her in addition from $5 to $10 or $15 a month. It was the intention of both that, as soon as she was old enough to do so, she should keep house for her father. Considering the whole testimony, it may be doubted whether the sons suffered any pecuniary loss by the death of the father. Under these circumstances, considering the expectancy of the deceased, his earning capacity, the situation of his children, and the amount which he was able to contribute and did contribute to their support, it seems apparent that the jury disregarded the instruction of the court with respect to the measure of damages which limited recovery to pecuniary

loss, and that the verdict must have been the result of passion or prejudice.

Complaint is made of an instruction given with respect to expert evidence. We find no error in this instruction, which is widely different from that given in *Hayden v. Frederickson,* 59 Neb. 141.

Complaint is made of instruction No. 6. The jury were told that in order to recover the plaintiff must establish that the toggle-bar was of insufficient strength, and then proceeded: "Should the plaintiff so prove, and, *it not appearing that the deceased assumed the risk that caused his death or was guilty of contributory negligence,* plaintiff would be entitled to a verdict at your hands," etc. It is said that by this language "the court told the jury that neither contributory negligence nor assumption of risk appeared from the evidence." The phrase evidently means "and, if it does not appear," etc. We doubt whether this expression misled the jury, but it would avoid the possibility of misapprehension to change its form upon another trial. It is possible that jurors of foreign birth, unused to our idioms, might mistake the meaning.

The trial court was correct in holding that it was improper for the plaintiff, upon rebuttal, to attempt to prove that the toggle-bar was not sufficient and was not a usual and customary appliance. This should have been done upon the main case. As the case now stands, with the testimony upon this point, of a single witness who had comparatively little experience with pile drivers upon the one side, and that of a number of experienced bridge builders, some of them disinterested, upon the other, it is a close question whether the evidence supports the verdict. Upon a new trial the condition of the evidence in this respect may be different.

Complaint is made that the court did not properly state the issues. We are again moved to criticize the practice of copying the pleadings in full as a method of stating the issues to the jury. In this case the trial judge, in instruction No. 5 gave a clear, succinct and satisfactory statement of the issues as to negligence which the jury were

called upon to determine. The inclusion of the entire pleadings in the charge, which contained some allegations in the petition which were not supported by the evidence, may have operated to the substantial prejudice of defendant. Jurors are not lawyers, and are not always prepared to discriminate between that portion of a lengthy charge which contains statements made in pleadings, and the remainder of it. A clear, concise and terse statement of the issues is much to be preferred to the involved legal verbiage often found in formal pleadings, and is much more easily apprehended. Where a petition contains allegations of fact not supported by any evidence, it may be reversible error to include such statements in that part of the charge of the court defining the issues to be tried, and, if the reviewing court is satisfied that the jury has been misled by so doing, it will be its duty to grant a new trial.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

REESE, C. J., SEDGWICK and HAMER, JJ., not sitting.