Hanna v. Hanna.

---

GRACE HANNA, APPELLEE, v. THOMAS HANNA, APPELLANT.

FILED FEBRUARY 28, 1920. No. 20710.

1. Trial: INSTRUCTIONS: STATEMENT OF ISSUES. In stating issues to the jury, it is error, which may be prejudicial, for the trial court to include pleas of which there is no proof, or to adopt the allegations of a petition in which plaintiff departed from the rules of pleading and inserted evidence, conclusions and arguments.

2. Husband and Wife: ALIENATION: INSTRUCTION. In an action by a wife, for the alienation of her husband's affections, it is error to

instruct the jury that "the wrong of the one who succeeds in withdrawing the husband's affection from the wife is almost impossible of measurement."

APPEAL from the district court for Dawson county: HANSON M. GRIMES, JUDGE. *Reversed.*

*H. M. Sinclair* and *W. A. Stewart,* for appellant.

*Cook & Cook* and *Fred A. Nye, contra.*

ROSE, J.

Grace Hanna, plaintiff, sued Thomas Hanna, defendant, to recover $50,000 for alienating the affections of her husband, David W. Hanna, a son of defendant. From a judgment on a verdict in favor of plaintiff for $14,000, defendant has appealed.

In the assigments of error the trial court's statement of the issues to the jury and an instruction on damages are assailed as erroneous and prejudicial. The determination of these questions requires a synopsis of plaintiff's case and of the defense interposed.

Plaintiff and David W. Hanna were married October 14, 1914, and for several weeks thereafter lived with defendant and his family in their home on their farm in Dawson county. In the spring of 1915 plaintiff and her husband moved to the latter's farm about a mile and a half away, where they resided until they were separated September 19, 1916. According to the petition, defendant, beginning soon after the marriage of plaintiff, made uncomplimentary comparisons between her and former sweethearts of her husband; meddled in her private affairs; told neighbors she was not adapted to farm life; accused her of gadding when she should have been at home at work; charged her with neglecting her duties as a wife; applied to her vulgar and profane epithets; threatened to assault her with his fists; advised her husband to leave her and thus alienated his affections. The petition shows on its face, however, that the affections of plaintiff's husband were not alienated from her before the date of their separation—September 19, 1916. Refer-

ring to that date she pleads: "Plaintiff and her husband were living together as husband and wife at their home on his land in Dawson county; that their demeanor toward each other was kind and affectionate, so that the plaintiff had no thought of any separation between them." Plaintiff testified to many of the incidents pleaded in her petition, and in giving her version of what occurred on the date of their separation, among other things, said, in substance: Defendant drove to their home in the forenoon and was sitting in his buggy talking to her husband when she approached them. Defendant in anger and malice, in presence of her husband, called her vulgar names; addressed her in violent and profane language; told her she needed a horse-whipping; wanted to know what she meant running around the country spending her husband's money; declared she couldn't hypnotize defendant; warned her husband not to let her hypnotize him; called attention to the glitter of her eyes; told her husband to come away from her, and threatened to assault her with his fists. Plaintiff also testified that this was followed by her husband saying to her, "Well, Grace, I guess we will have to quit," and by his leaving her.

The language and conduct imputed to defendant were denied in an answer pleading that his son David W. Hanna, soon after his marriage to plaintiff, became afflicted with an incurable tumor on his brain, resulting in total blindness and requiring attention, care and nursing, which plaintiff failed to provide; that defendant objected to her neglect, and without avail entreated her to give her husband proper attention and care in his illness; that in consequence of plaintiff's neglect her husband voluntarily came to his father's house for necessary attention, care and nursing; that plaintiff's husband often complained to his father of the neglect and ill-treatment of his wife, of her absence from home, of her lack of interest in their farm life, and of kindred wrongs; that on these matters the son sought his father's advice,

which, in every instance, based on the father's experience and judgment, without malice, was sincerely and honestly given for what defendant believed to be for the best interests of his son and plaintiff. The testimony on behalf of defendant tended to establish the defenses pleaded. His story of what occurred at the home of his son September 19, 1916, differed from that of his daughter-in-law. According to his version, he called to notify his son that he had discovered cows in his son's cornfield and to assist him in getting them out. While conversing with his son, the cows at the time being in danger from eating green corn and the crop being damaged by them, plaintiff, in attire that attracted the attention of defendant, came out of the house to depart in an automobile without her husband. In testifying, defendant denied the misconduct and language imputed to him by plaintiff on this occasion. The evidence in his behalf tends to show that he left plaintiff and her husband alone; that in an automobile she left her husband a few minutes later, and did not return for a week or ten days, and that in the meantime her husband voluntarily went to defendant's home — a proper refuge for him in his illness under the circumstances.

In the sensitive situation indicated by this outline of the pleadings and the proofs, the trial court resorted to the petition of plaintiff in stating to the jury the questions at issue. Two petitions had been filed, and in both plaintiff had departed from the statutory rule requiring "a statement of the facts constituting the cause of action in ordinary and concise language," and had inserted evidence, conclusions and arguments. Rev. St. 1913, sec. 7664. In the trial court's attempt to summarize the petition in an instruction, the vice in plaintiff's pleading reached the jury. In this manner, at least one allegation of which there was no proof was read to the jury from the bench.

The error in stating the issues to the jury was followed by another error in an instruction that "the wrong of

the one who succeeds in withdrawing the husband's affection from the wife is almost impossible of measurement.'' The law is that only such compensatory damages as are shown by the evidence to be the probable, direct and approximate consequence of the wrong pleaded are recoverable. The tendency of the instruction was to exaggerate in the minds of the jury both the wrong pleaded and the resulting damages. For these errors, which on the record presented are obviously prejudicial to defendant, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

DAY, J., not sitting.