CORWIN M. CULVER, SPECIAL ADMINISTRATOR, APPELLEE, V. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED JULY 18, 1924.   No. 22820.

1. **Damages:** INJURY: QUESTION FOR JURY. Where the opinion of medical experts as to the cause which has produced a lesion of the spinal cord, causing partial paralysis, is in decided conflict, the question whether the injury to the cord was the result of external accident or was the result of disease is one for the jury, there being sufficient evidence to support a verdict based upon either theory.

2. **Witnesses:** PRIVILEGED COMMUNICATIONS: NURSES. Section 8840, Comp. St. 1922, provides: "No * * * physician or surgeon * * * shall be allowed in giving testimony to disclose any confidential communications, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline." A professional nurse assisting a physician to whom such confidential communications have been made by a patient is an agent of the physician. She stands in the same relation of confidence to the patient and may not be permitted to testify to such communications unless the privilege has been waived by the patient.

3. ——: ——. A sergeant of the United States army medical corps, who is not a physician, who acts under the regulations of the army in furnishing to soldiers medical or prophylactic treatment for venereal diseases, and who does not fall within the rule as to assisting nurses herein announced, may testify to the fact that application was made to him for such treatment, and as to the nature of the service rendered by him, where such facts are material to throw some light on the question at issue.

4. **Master and Servant:** ASSUMPTION OF RISKS. As a general rule an employer owes no duty to warn an employee of mature age of

the extent of his lifting ability, and one who attempts to perform a task of this nature, requiring exertion beyond his physical strength, assumes the risk of injury therefrom.

5. ———: ———. QUESTION FOR JURY. But if an employee is directed to exercise his strength in a peculiar and unusual manner and position which casts a strain upon a part of his body where a strain may not ordinarily be sustained, and where the results of such unusual exertion cause bodily injury, the question whether this was an ordinary risk incident to the occupation or an unusual and extraordinary risk, and whether the plaintiff assumed such risk. are questions for the jury.

6. Appeal: INSTRUCTIONS: REVIEW. Where no instructions are tendered to the trial court by a party who afterwards appeals and assigns error in certain instructions, this court will not examine the charge with such a critical mind as where the trial judge has had the benefit of the views of the appellant as to the proper legal principles applicable by the tender of instructions on the points involved.

7. Damages: LOSS OF EARNING CAPACITY. In computing the damages recoverable for loss of earning capacity in actions for damages for personal injuries, under the federal employers' liability act, adequate allowance should be made for the earning power of money, and when future payments are to be anticipated the verdict should take into account the present value of the annual payments of which plaintiff in such a case, or his beneficiaries, have been deprived.

8. ———: PAIN AND SUFFERING. Damages for pain and suffering are not to be awarded as upon the basis of present worth based upon the life expectancy of the plaintiff, but as a gross sum presently payable.

APPEAL from the district court for Gage county: LEONARD W. COLBY, JUDGE. Reversed.

N. H. Loomis, Edson Rich, C. A. Magaw, Thomas W. Bockes and Rinaker, Kidd & Delehant, for appellant.

Bartos & Bartos and Hall, Cline & Williams, contra.

Heard before LETTON, ROSE,, DEAN, DAY and THOMPSON, JJ., BLACKLEDGE and REDICK, District Judges.

LETTON, J.

This is an action under the federal employers' liability

act for personal injuries alleged to have been suffered by the plaintiff on account of the negligence of defendant. The facts are somewhat peculiar. Plaintiff was a brakeman, earning about $150 a month. He was employed upon a freight train running from Lincoln to Valley, Nebraska. He testified that, on December 14, 1920, the conductor directed the plaintiff and another employee to load a handcar, weighing between 500 and 600 pounds, into a boxcar. The handcar was upon a gravel platform about the level of the rails. Upon direct examination he stated that he told the conductor that the handcar was pretty heavy for three men to lift, and asked him where the section crew. was. The section crew was at work elsewhere. The conductor directed him to get into the boxcar. The other two men lifted one end of the car, so that he could reach it and lift on the front end while they lifted on the back end. After failing to lift the car in this manner on account of its weight, "the conductor said, 'Twist one front wheel in and then the other, while we lift,' and I put all my strength on the one wheel and twisted it and at the same time I felt a snap in my back." The handle of the handcar was about on the same level as his feet. After the evidence in behalf of plaintiff had been taken and he had rested his case, and a motion by defendant to direct a verdict had been argued, plaintiff was recalled and testified that the handcar slipped owing to one of the men on the ground letting it go; that he was attempting to twist it and save it from going out of the car when he felt the snap in his back; that, if he had not let go, the car might have taken him out with it and probably have lit upon the other two men, and, in his judgment, the slipping of the car was due to a sudden jerk when one of the men on the ground tried to get a better grip on the handles.

The allegations of negligence in the petition are that defendant failed in its duty to see that the help furnished was sufficient to handle and load the handcar so as to avoid injury to the plaintiff; failed to furnish and provide skids and appliances or ways and means of loading heavy and

Culver v. Union P. R. Co.

bulky articles; that, by its conductor, defendant carelessly and negligently ordered and directed the plaintiff to engage in a dangerous and hazardous undertaking, and carelessly and negligently gave him specific directions as to the manner in which he was to lift the handcar, which caused the body of plaintiff to become twisted in an unusual way and caused his spinal column and its tendons, muscles and ligaments to be bruised, torn and stretched; that plaintiff did not apprehend or understand the dangerous nature of the situation, and defendant negligently failed to caution him of the danger. It is alleged. that he has become paralyzed as a result. He asks judgment for $65,000. The answer denied negligence of defendant, and alleged negligence of plaintiff and assumption of risk. The reply denied that the risk was open, obvious, apparent or known to the plaintiff. The jury returned a verdict for the plaintiff in the sum of $50,000.

The errors relied upon for reversal are: Improper activity of the trial court in the examination of witnesses and in remarks from the bench; error in excluding evidence offered by the defendant, and in the admission of improper evidence on behalf of plaintiff over objections; the giving of erroneous instructions to the jury; error in overruling defendant's motion to instruct a verdict in its favor; and that the verdict is excessive and contrary to law.

Defendant has collected and set forth in its brief a number of rulings and remarks made by the trial judge during the progress of the trial, and assigns error committed by frequent unnecessary and improper examination of witnesses by the judge. The taking of evidence covered about six days. It is possible for a trial judge to influence the jury by his manner, by the emphasis, or lack of emphasis, placed upon his certain words, and by other intangible methods not easily described, and which cannot be reproduced upon the written page. In a case involving medical expert testimony such as this, sometimes a question or remark by the court aids in the proper application by the jury of such testimony to the facts. It is entirely proper

for the trial judge to aid in preventing misconception by
properly directed questions or remarks.   Of course, he
should not go too far in this direction, especially in a crim-
inal case.   *Bartley v. State,* 55 Neb. 294.   There is nothing
wrong in a trial court asking questions when their tenden-
cy is only to develop the truth.   *Leo v. State,* 63 Neb. 723.
But juries are very apt, especially in doubtful cases, to be
governed largely by the view the trial judge takes and to
seize every indication of leaning by him to one side or the
other as a guide to their action.   Great care should be taken
to avoid even the appearance of partiality.   There were
4,511 questions asked at the trial.   Complaint is made as
to comparatively few remarks.   When the whole record is
considered, though more care might have been exercised
in some instances, prejudicial error in this respect is not
shown.

Aside from the very material question whether the hand-
car was loaded in the manner detailed by plaintiff, or
whether it was loaded in the manner described by the con-
ductor, by which method no twisting or displacement of
the vertebræ could occur, the principal conflict in the evi-
dence was over the question whether the injury to the spi-
nal cord of plaintiff was caused by a dislocation of the ver-
tebræ in the dorsal region due to a sudden strain placed
upon him by attempting to lift a heavy weight in an im-
proper position, thus causing a hemorrhage or apoplexy
of the blood vessels of the spinal cord and subsequent de-
generation of the cord at the fifth dorsal vertebra, as tes-
tified to by the medical witnesses in behalf of plaintiff, or
whether it was caused by a complete transverse myelitis
of the cord at the fifth dorsal vertebra as a result of syph-
ilis, which was the opinion of the medical experts testify-
ing on behalf of defendant.   One who would read the tes-
timony of the medical experts testifying in behalf of plain-
tiff would in all probability be fully satisfied and complete-
ly convinced that the degeneration of the spinal cord caus-
ing the paralysis resulted from a dislocation of the verte-
bræ, and would be also fully satisfied that, if the plaintiff's

version of the manner in which the handcar was loaded was
true, the violent effort and overstraining it took to raise
the car in its twisted position, and the slipping of the car
in the hands of the other men, were the proximate and pre-
vailing cause of his deplorable condition.    On the other
hand, the evidence of medical experts testifying on behalf
of defendant seems fully as convincing that the destruction
of the tissues of the spinal cord and consequent paralysis
of the lower extremities were the result of a syphilitic in-
fection of the blood vessels of the cord, causing a defective
blood supply and consequent degeneration of that organ in
the region of the fifth dorsal vertebra.    It is impossible
within the limits of this opinion to set forth the facts and
reasoning by which each of these diverse opinions was
reached.    The jury might well have arrived at either con-
clusion.    The saying is: "Who shall decide when doctor's
disagree?"    Under our system of jurisprudence, the jury,
and not the court, is the body which is authorized by law
to decide such a question, and there is sufficient evidence
to support the finding that the accident caused the injury.

Whether the evidence sustains the verdict also depends
in large measure upon whether the jury believed the tes-
timony of the plaintiff or the testimony of the conductor
and station-agent as to the manner in which the handcar
was loaded, and the testimony of a number of experienced
railroad trainmen as to whether it was proper and cus-
tomary to load such handcars into boxcars by the use of
only three men, without skids, planks or appliances where-
by the handcar might be rolled into the boxcar.    There was
sufficient conflict between the testimony of the two classes
of witnesses upon this point to justify a verdict either way.
As to the manner in which this particular handcar was
loaded, the testimony of the plaintiff was in direct con-
flict with that of the conductor and station-agent at Ray-
mond who assisted in loading it.    But it was the province
of the jury to determine which of these witnesses was stat-
ing the facts as they actually occurred.    This court has
not the witnesses before it and has not the same facilities

for determining the truth or falsity of the respective narrations, even if this were within its proper function, which it is not. We are convinced that, if the jury believed the evidence on behalf of either plaintiff or defendant, there was sufficient evidence to sustain a verdict in favor of either party on this point.

The same reasoning applies to the assignment that the court erred in overruling defendant's motion to instruct a verdict in its favor.

Several questions are raised as to the privilege allowed confidential communications between physician and patient. At common law there was no such privilege. This rule still prevails when not changed by statute. The statutory privilege originated in a statute of New York passed in 1828. Its terms have been adopted in substance in many of the other states of the Union. Some courts have held that the statutes extending such a privilege to physicians or surgeons are remedial in their nature and should be liberally construed, while others take the view that they are in derogation of the common law, and an exception to the general rule; that the maxim, *"Expressio unius est exclusio alterius,"* should be applied and construed strictly; that unless the witness comes clearly within the class limited by the statute his testimony must be received, and that the burden of proving the right to the privilege is upon the person seeking to exclude the evidence. *Head Camp, W. O. W., v. Loeher,* 17 Colo. App. 247; *Colorado Springs & 1. R. Co. v. Fogelsong,* 42 Colo. 341; *Indiana Union Traction Co. v. Thomas,* 44 Ind. App. 468; *Smoot v. Kansas City,* 194 Mo. 513; *Springer v. Byram,* 137 Ind. 15; *Masons Union Life Ins. Ass'n v. Brockman,* 26 Ind. App. 182; *Henry v. New York, L. E. & W. R. Co.,* 10 N. Y. Supp. 508; *Brown v. Hannibal & St. J. R. Co.,* 66 Mo. 588. In former decisions this court has seemed to rule in accordance with the view last expressed, and in view of the provisions of section 8835, Comp. St. 1922, we believe it to be the proper one to take. This section provides: "Every human being of sufficient capacity to understand the obligation of an

oath, is a competent witness in all cases, civil and criminal, except as otherwise herein declared." Certain classes of persons are then declared incompetent to testify under certain circumstances. Physicians or surgeons are not rendered incompetent by this section. Section 8840 provides: "No * * * physician or surgeon * * * shall be allowed in giving testimony to disclose any confidential communication, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline." Section 8841 provides: "The prohibitions in the preceding sections do not apply to cases where the party in whose favor the respective provisions are enacted, waives the rights thereby conferred." A physician or surgeon therefore is a competent witness, except as to the class of confidential communications mentioned in section 8840, and also as to such communications if the privilege has been waived. *Sorensen v. Sorensen*, 56 Neb. 729; *Hayden v. Hayden*, 107 Neb. 806.

The witness Wheeler testified that he was a former sergeant in the medical corps of the United States army, stationed on the Mexican border; that he was not a physician; that he was in charge of a prophylaxis station and infirmary, and that his duties at the prophylaxis station were performed without the supervision of the medical officer. The following colloquy occurred: "Q. Did you have occasion to give attention to Arlie W. Culver at one or more of those prophylaxis stations? Q. (By Mr. Bartos) Were you acting under the orders or directions of the doctors? A. Yes, sir. Q. (By the Court) The medical officer? A. Yes, sir." The question was then asked: "Q. Did Mr. Culver ever come to you personally for treatment at a prophylaxis station when there was no medical officer or physician present?" An objection made for the same reason was sustained. The defendant offered to prove that the witness "had personal charge without the presence or supervision of any officer of the medical corps or any physician of the administration of the prophylaxis or prophy-

Culver v. Union P. R. Co.

lactic treatment for the prevention or control of the infection of gonorrhea or syphilis; that on numerous occasions during said period the plaintiff, Arlie W. Culver, came to the said prophylactic station and stated to the witness that he had recently had sexual intercourse and desired to receive treatment, and at that time the witness personally administered and supervised said treatment." He also offered to prove that the treatment administered by him to the plaintiff was the treatment required by the war orders or regulations of the United States army, and not a treatment prescribed by physicians, and that the treatment was personally administered by the witness without instructions or directions of any medical officer, but in the regular routine of his duties. This offer was rejected.

The statute is not intended to conceal relevant facts not communicated confidentially to a physician in his professional capacity. A druggist may testify as to the kind of drugs furnished; a dentist is not within the privilege; and a professional nurse not assisting a doctor is not. *Hobbs v. Hullman,* 171 N. Y. Supp. 390; *People v. DeFrance,* 104 Mich. 563, 28 L. R. A. 139; *People v. Schuyler,* 43 Hun (N. Y.) 88; *Deutschmann v. Third Avenue R. Co.,* 84 N. Y. Supp. 887; *Kendall v. Grey,* 2 Hilt. (N. Y.) 300; *Brown v. Hannibal & St. J. R. Co., supra.* The burden of establishing the privilege has not been met by plaintiff with respect to this testimony, and since whether or not plaintiff was infected with syphilis was a very material question in the case, it was prejudicial error to exclude the offered proof.

It is assigned that prejudicial error was committed by the court when it sustained objections to the testimony of Miss Clara Rhodes as being a privileged communication. Miss Rhodes was superintendent of nurses at Dr. Fall's hospital at the time plaintiff was taken there. Preliminary inquiries were made as to the facts surrounding her duties in the hospital. Defendant offered to prove by this witness that she was present when a specimen of blood was taken from the plaintiff by Dr. Fall; that she sent this to the state laboratory at Lincoln, Nebraska, together with

a blank requesting a Wasserman test to be made of the blood, to which the name of Dr. Fall was signed, and that a few days after the specimen was mailed a report was received from the laboratory, directed to Dr. Fall, showing the result of the Wasserman test to be four plus positive. Defendant also offered to prove that the witness administered to the plaintiff at various times while he was at the hospital doses of potassium iodide and bichloride of mercury, and that she prepared injections of salvarsan.

At the time the Nebraska statute was enacted the profession of graduate or registered nurse had scarcely come into being. Observing that the same reasons which caused the extension of the privilege to physicians applied with equal force to professional nurses, New York and Arkansas have amended their statutes so as to include "a professional or registered nurse." But the legislature of Nebraska has not included such persons within the privileged class, and a nurse, merely as such, is not within such class. *Homnyack v. Prudential Ins. Co. of America*, 194 N. Y. 456. A different rule prevails where the nurse acts as one of the agents or assistants of the physician in charge. A nurse is often necessarily present at conversations between the patient and the doctor with respect to the ailment or condition of a patient, and little good would be subserved if the lips of the doctors might be sealed by the statute as to such conversations but the nurse or attendant might freely testify to all that was said and everything that was done. The purpose of the law is to protect the right of privacy, and while its scope should not be unduly extended, its very intention might be completely thwarted by the admission of testimony from this class of witnesses. In such case, if she received or heard confidential communications from a patient "necessary and proper to enable him (the physician) to discharge the functions of his office according to the usual course of practice," then the privilege extended to the physician extends equally to the nurse. 5 Wigmore, Evidence (2d ed.) secs. 2321, 2380-2383. There was no error in this ruling.

Culver v. Union P. R. Co.

On his examination in chief plaintiff testified that he went to see the company physician, Dr. Mitchell. "Q. What happened after you went to see him? A. He made an examination quite thorough, and he said I had a gall bladder trouble, and advised me to go to Omaha to the company hospital for an operation at once, and I told him that I didn't feel that I could, that I would have to go home first." He also testified that the doctor gave him a prescription and a note to another doctor. Dr. Mitchell was called for the defense. He testified that he made an examination of plaintiff. Questions asking for what purpose this was made, whether plaintiff made any statement to him at that time with reference to the nature of his ailment or the symptoms of any ailment, as to what conversation he had with reference to the complaint of plaintiff, and whether plaintiff gave any information as to an injury, were objected to as privileged, and the objection to the questions and to the offer of proof was sustained. Irrespective of the statute as to waiver of privilege, the statute provides that, when a part of a conversation is given in evidence by one party, the whole of it on the same subject may be inquired into by the other. Comp. St. 1922, sec. 8849. Defendant was entitled to introduce the whole conversation. It was error to exclude the offered testimony. *Union P. R. Co. v. Thomas*, 152 Fed. 365.

In the direct examination of the plaintiff, he testified, in substance, that up to December 17, 1920, his physical condition was nearly perfect, that he had malarial fever for about a month when he was on the Mexican border, in the army, and that he recovered. He was then asked, "Did you ever suffer with anything else that you can recall at this time? A. No, sir." On cross-examination he was asked, "Isn't it a fact, Mr. Culver, that you were treated for a chancre by a medical officer while down on the border?" Plaintiff objected to this question as not proper cross-examination, and the objection was sustained. If the witness had answered in the affirmative, it would have tended to contradict his evidence in chief and to support the opin-

ion of the doctors called by defendant, that the injury to his spine was the result of a syphilitic affection. This was proper cross-examination, and the exclusion of this testimony was prejudicial. *Livingston v. Omaha & C. B. Street R. Co.*, 104 Neb. 118.

. The negligent acts complained of in the petition were the failure to furnish sufficient help and the negligent order of the conductor to load the handcar in the manner in which the plaintiff testifies he was directed to lift. A majority of the court take the view that, since the expert medical testimony in behalf of plaintiff is to the effect that "lifting on the handcar in the ordinary way would not produce any lesion whatsoever," and that the injury was "due to sudden extension with rotation of a vertebra in the dorsal region, which was due to a sudden strain placed upon him by overweight in an improper position," the question whether there was a negligent order and whether this was an unusual and extraordinary risk, which the plaintiff did not assume, were questions for the jury.

The remaining questions are concerned with whether there was error in the giving of certain instructions to the jury, and whether the verdict is excessive and the result of passion and prejudice. It must be noted here that defendant tendered no instructions to the court presenting its particular theory of the case. In this connection it must be said that, even if some of the instructions were slightly inaccurate, where the trial court has not had the opportunity of being informed as to what the contention of the complaining party is as to the points of law involved, this court will not examine a charge with such a critical mind as where the trial judge has had the benefit of the views of such party as to the proper legal principles applicable.

In stating the issues to the jury, the trial judge gave, to the length of nearly six typewritten pages, a substantial copy of the pleadings in the case. Some of the statements in the petition are not supported by proof. We have often criticised the practice of copying lengthy pleadings into the instructions given by the court, and have said that

the trial judge should eliminate from the statement of the issues irrelevant and redundant matter, as well as allegations which the evidence has failed to substantiate. It is difficult for the jury in a lengthy trial to discriminate between charges of negligence submitted to them in instructions of the court from those which have been established by the evidence, and they may think that if these were not in evidence they would not have been mentioned by the judge. Several judgments have been reversed by this court on account of this practice. *Hutchinson v. Western Bridge & Construction Co.*, 97 Neb. 439; *Lang v. Omaha & C. B. Street R. Co.*, 96 Neb. 740; *Spieler v. Lincoln Traction Co.*, 103 Neb. 339; *Hanna v. Hanna*, 104 Neb. 231.

Since the question may arise upon a new trial, it is suggested that in computing the damages recoverable for loss of earning capacity in actions for damages for personal injuries, under the federal employers' liability act, adequate allowance should be made for the earning power of money, and when future payments are to be anticipated the verdict should take into account the present value of the annual payments of which plaintiff in such a case, or his beneficiaries, have been deprived. Damages for pain and suffering are not to be awarded as upon the basis of present worth based upon the life expectancy of the plaintiff, but as a gross sum presently payable. *Sweat v. Hines*, 107 Neb. 1; *Chesapeake & O. R. Co. v. Kelly*, 241 U. S. 485.

In view of the errors at the trial herein discussed, and of the fact that some of the other complaints made may be obviated on another trial, the judgment is reversed and the cause remanded.

REVERSED.

Note—See Appeal and Error, 3 C. J. p. 858, sec. 758; Damages, 17 C. J. p. 907, sec. 196; p. 926, sec. 222; p. 1059, sec. 361—Master and Servant, 26 Cyc. pp. 1095, 1478; Witnesses, 40 Cyc. pp. 2383, 2388.