MARION F. McCLELLAND, APPELLEE, v. INTERSTATE TRANSIT LINES, APPELLANT.

296 N. W. 757

FILED MARCH 7, 1941. No. 30950.

*George C. Holdrege, William J. Schall* and *Thomas F. Hamer,* for appellant.

*Kelsey & Kelsey, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

Plaintiff recovered a judgment for personal injuries and property damage resulting from an automobile accident. Defendant appeals and presents questions as to the correctness of the instructions and as to the sufficiency of the evidence to sustain the verdict. The seriousness of the injuries and the amount of the verdict are not presented for review.

The facts are not in serious dispute. A considerable part of the facts were admitted to be true by stipulation of the parties. They are to be commended for this procedure.

The accident occurred Sunday afternoon, July 2, 1939, on east and west highway No. 275, west of Omaha and opposite Father Flanagan's "Boys Town." The weather was warm, skies clear, pavement dry and visibility good. The highway at the point of the accident, and for several miles on either side, is a four lane, paved thoroughfare, constructed to accommodate two lanes of automobile traffic moving in either direction. The two center lanes are known as passing lanes and the two outer lanes as driving lanes.

There are two entrances to Boys Town from the highway. The east entrance is built at an angle so as to accommodate west-bound traffic into the home from Omaha, with the result that traffic from the west, using that entrance, must enter at an acute angle, a difficult turn for a large vehicle to make. The west entrance to Boys Town is at right angles to the highway. The entrances are several

hundred feet apart and between the two is a crest of an elevation or hill, so that the approach to the east entrance from the west is downhill.

The defendant, using five large passenger buses, had taken a party to visit Boys Town. Defendant's buses had unloaded their passengers at the home. One bus had apparently left the grounds before the events leading up to the accident. Preparing to reload, the remaining four buses had left the Boys Town grounds by the west entrance, went upon the highway, one behind the other, headed east, and intending to reenter the grounds by the east entrance. The lead bus did not succeed in making the turn. The second bus had pulled out into the east-bound passing lane and was headed into the entrance, and the last two buses occupied the driving lane. In this position, the four buses formed, roughly, a shepherd's crook, top to the east, curve to the north and blocking the two lanes of travel for east-bound traffic. Plaintiff approaching in his car from the west at a reasonable rate of speed and in the driving lane saw the rear bus at a distance of several hundred feet ahead. When about 100 feet from the rear bus, plaintiff, determining that there was no car on his left to interfere, crossed from the driving lane into the passing lane. He then noticed the driver of the rear bus giving a signal with his arm which plaintiff interpreted to mean for him to slow down, which he did, intending to drift down alongside the two rear buses, and then pass around the front buses that blocked the passing lane when west-bound traffic permitted. Both west-bound lanes were then occupied by vehicles moving west. When plaintiff was about 25 or 30 feet from the rear of the west bus, and while moving at about three miles an hour, the driver of the rear bus sounded his horn and waved "more violently up and down." Plaintiff interpreted this to mean that he was to stop and he started to do so, without giving a signal of his purpose. Almost instantly a fast moving car, which had approached from the west, struck plaintiff's car in the rear, drove it against the back end of the rear bus, with sufficient force

to overturn plaintiff's car and cause the damage for which recovery was asked.

Apparently all eyewitnesses were called to testify except the driver of the coach who gave the signals.

Plaintiff's petition sets out these facts in detail and alleged that the defendant was negligent in parking its buses on the highway; in placing its buses across both of the east-bound lanes of travel; in attempting to turn its buses into the Boys Town entrance from the west; in signaling plaintiff to stop; in not driving its buses off the highway onto the parking; in not leaving a clear and unobstructed width of not less than 15 feet upon the main portion of the highway; in blocking the highway to travel; in so driving its buses as to prevent the plaintiff from using the highway; in creating a traffic trap by said operations; in maintaining a condition upon the highway dangerous to persons using the highway and liable to cause accidents; and that defendant knowingly and negligently brought about and created the situation which resulted in the accident and plaintiff's injury.

By answer, defendant denied that any negligence or carelessness on its part caused or contributed to the accident and alleged that the accident was caused by the negligence and carelessness of the plaintiff and of the driver of the automobile which struck plaintiff's car from the rear.

By reply, plaintiff denied the allegations of the answer of his own or the other driver's negligence.

Plaintiff's petition (as set out in the transcript) is 8½ pages long. The trial court in instruction No. 1 used approximately seven pages in reciting the allegations of the petition to the jury, including a detailed recital of facts alleged, and including an almost verbatim copy of the one and one-half pages of plaintiff's allegations of negligence.

The instruction recited at the beginning: "Plaintiff for his cause of action against the defendant alleges." Three and one-half pages later in the same instruction, the language is "that the accident, injury and damage were caused by the gross carelessness and negligence of the defendant in

that it," followed by more than a page of recitals of the alleged acts of negligence, concluding with "because thereof the plaintiff has suffered the following injuries and damages." Then follow two pages of recitals of plaintiff's injuries and damages. Then approximately a page of recitals of the answer and reply. Many of these recitals are in form statements of fact without qualifying words, such as "it is alleged" or "it is claimed." The concluding paragraph (over three pages after the recital of the negligence allegations) is: "You are instructed that the allegations of the pleadings and facts are not to be considered by you as evidence, and are not to be considered or regarded by you as such; they are merely the *statement of facts* which are intended to present the issues to the court and jury and are not evidence in any particular."

The stating of the issues by substantially copying the pleadings of the parties, almost verbatim, as was done here, has been repeatedly condemned by this court. If it results in prejudice to the complaining party, it is sufficient ground for reversal. In stating the issue to the jury, it is likewise error, which may be prejudicial, for the trial court to include allegations of which there is no proof. *Hutchinson v. Western Bridge & Construction Co.*, 97 Neb. 439, 150 N. W. 193; *Spieler v. Lincoln Traction Co.*, 103 Neb. 339, 171 N. W. 896; *Hanna v. Hanna*, 104 Neb. 231, 176 N. W. 732; *Thomas v. Rasmussen*, 106 Neb. 442, 184 N. W. 104; *Culver v. Union P. R. Co.*, 112 Neb. 441, 199 N. W. 794; *Weber v. Weber*, 124 Neb. 878, 248 N. W..642.

Plaintiff argues that instruction No. 1 was justified in the light of the decision in *Merritt v. Ash Grove Lime & Portland Cement Co.*, 136 Neb. 52, 285 N. W. 97, wherein a recital of the pleadings, three pages in length, closed with the words: "The foregoing are merely a statement of the *claims* of the parties, and, except as to admissions, are not to be taken as evidence."

There are a number of distinctions that could be pointed out in addition to the difference in the length of the recited pleadings, such as the finding that the evidence in the

*Merritt* case tended to support the recited allegations, and that in the *Merritt* case the allegations were referred to as statements of the *claims* of the parties, whereas in the instant case they are referred to as statement of *facts*. In the *Merritt* case the instructions contained a "synopsis" of the "simple statement of the cause of action;" here the instruction can hardly be classed as a "synopsis," but is more accurately described as a copy, substantially, of the plaintiff's petition.

By instruction No. 6 the jury were told:

"You are instructed that before the plaintiff can recover on his cause of action he must prove *one or more* of the allegations of negligence alleged therein by a preponderance of the evidence, and that such negligence was the proximate cause or concurred with the negligence of another as the proximate cause of the accident in which the plaintiff was injured, and the mere fact that the plaintiff's automobile was struck by the automobile of another, and that as a result thereof the plaintiff was injured, would not, merely of itself, warrant the jury in returning a verdict in the plaintiff's favor."

Clearly, at this point in the instructions, the jury were given to understand that, so far as acts of negligence were concerned, the plaintiff was entitled to recover, if *one or more* of the many allegations of negligence recited in the petition were proved.

However, by instruction No. 10, the court instructed the jury:

"You are further instructed that the only matter for your consideration in this case is whether or not the plaintiff has established by a preponderance of the evidence that the driver of defendant's bus waved his arm and hand in such manner as to cause the plaintiff to slow up or stop his automobile; that the waving of such arm and hand, causing the plaintiff to slow up or stop his car was, under the facts and circumstances herein established, negligence within the meaning of the rule herein defined, and, if negligence, that the same was the proximate cause of the accident in which

the plaintiff was injured, or concurred with the negligence of a third person as the proximate cause of the accident as within the rule of concurrent negligence as the same has been herein defined. If the plaintiff has sustained this burden by proving all of the above by a preponderance of the evidence, then you will find for the plaintiff."

By the above instruction, the court withdrew from the consideration of the jury all acts of alleged negligence, recited in instruction No. 1, save and except the one act of negligence recited in instruction No. 10.

"In this manner * * * allegation of which there was no proof was read to the jury from the bench." *Hanna v. Hanna, supra.* "Jurors are not lawyers, and are not always prepared to discriminate between that portion of a lengthy charge which contains statements made in pleadings, and the remainder of it." *Hutchinson v. Western Bridge & Construction Co., supra.* "It is difficult for the jury in a lengthy trial to discriminate between charges. of negligence submitted to them in instructions of the court from those which have been established by the evidence, and they may think that if these were not in evidence they would not have been mentioned by the judge." *Culver v. Union P. R. Co., supra.*

Which instruction did the jury follow in reaching its verdict? This court has no way of determining that fact. "Correct instructions to the jury do not cure prejudicial error in other misleading and contradictory instructions." *Bocian v. Union P. R. Co.,* 137 Neb. 318, 289 N. W. 372.

For errors in the instructions, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

PAINE, J., dissenting.

In my opinion, there is no justifiable reason shown by the record for remanding .this case for a new trial. It should be reversed and dismissed.

I am authorized to say that Mr. Justice Carter concurs with this view.