JAMES FRANKS, APPELLEE, V. JOHN R. JIRDON ET AL.,
APPELLANTS.

20 N. W. 2d 597

FILED NOVEMBER 16, 1945. No. 31977.

*Mothersead & Wright,* for appellants.

*F. J. Reed,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Plaintiff brought this action at law to recover from the defendants the balance due on the purchase price of potatoes. From a verdict for the plaintiff the defendants appeal.

This case has previously been in this court. 144 Neb. 693, 14 N. W. 2d 372. It was reversed and remanded for retrial because the record contained competent evidence that required the court to submit the case to a jury. A retrial was had and the case again appealed.

A sufficient statement of the case can be found in our former opinion and the evidence will not again be set forth, except as it may be necessary to discuss it in connection with the errors complained of.

The appellants contend that the court submitted the case to the jury upon the wrong theory. It is, of course, the duty of the trial court to present to the jury the issues raised by the pleadings and supported by evidence.

By instruction No. 6 the court told the jury: " * * * You are further instructed that the only issue of fact presented by this case for the jury's consideration is the quantity of potatoes in the 14 bins on or about March 1, 1942, that would have passed over an inch and one-half potato screen with cuts, rots and greenheads discarded. Therefore, if you find that the plaintiff has proved by a preponderance of the evidence that there were over 4,375 hundred-weight of potatoes in the 14 bins that met or would have met the specifications of the sales contract as set out herein, you will find for the plaintiff, * * * ." The court further instructed the jury as follows: "You are instructed that upon the title to the potatoes in the 14 potato bins passing to the defendant, the defendant's liability for said potatoes was fixed at $1.45 per hundred-weight for all of the potatoes in said 14 bins that would have met the specifications of the sales contract and the plaintiff in order to recover is not required to prove where the potatoes were transported or what was done with them. The plaintiff in order to recover for the potatoes is not required to prove that they reached the defendants' warehouse or any other place."

The evidence shows that the appellants' country crew took possession of the appellee's potato cellar, in which the 14 bins of potatoes here involved were located, on or about March 1, 1942, and remained in possession thereof until all

of the potatoes in the 14 bins had been removed therefrom and processed.

On the other hand the appellants offered instructions, which the court refused, that would have submitted the case on the theory that they were liable only for the potatoes actually taken. The proposed instructions contain this language: "You are instructed that the sole question for your determination in this case is the number of plaintiff's potatoes that were taken and accepted by the Defendant. This is not an action for a breach of contract to purchase, but purely an action to recover for the potatoes actually taken, weighed and accepted by the defendant. You will therefore not allow plaintiff anything for potatoes that the defendant did not take and accept although said potatoes may have been potatoes that would have passed over a one and one-half inch screen, rots, cuts and green heads out. * * * You are instructed that the burden of proof is on the plaintiff to show by a preponderence of the evidence the amount of potatoes taken and accepted by the defendant under the contract involved in this suit."

The appellee's amended petition contains the following allegations: " * * * this plaintiff sold and the defendant bought all of the potatoes contained in the potato bins * * * defendants agreed that they would run all of said potatoes over a one and one-half inch potato screen and would discard 'rots, cuts and greenheads' and pay this plaintiff $1.45 per hundredweight for all of the saleable potatoes salvaged from the fourteen potato bins aforesaid by the above mentioned process. * * * That shortly thereafter * * * the defendants accepted and received all of said potatoes, appropriated same under the sale aforesaid and removed all of said potatoes from the premises where they were stored. * * * That there were in the fourteen potato bins aforesaid at the time of the aforesaid sale and at the time of the removal of said potatoes by the defendants, in excess of 5965 hundredweight of marketable potatoes that would have passed over a one and one-half (inch) potato screen after discarding all 'rots, cuts, and greenheads'."

Appellants, in their answer, admit: " * * * that under the terms of said sale the defendants agreed to pay plaintiff $1.45 per hundred weight for all of the potatoes that would pass over a 1½ inch potato screen except the rots, cuts and green-heads, all the processing, the moving and hauling of the potatoes to be done by the defendants, * * * ."

Ted Currier, one of the appellants and the party who negotiated for the purchase of the potatoes, testified to the offer he made the appellee as follows: "I offered Mr. Franks two different propositions on the purchase of his potatoes. One price of $1.50 over an inch and seven-eighths screen, cuts, rots and greenheads out. The other price was $1.45 over an inch and a half screen with the cuts, rots and green-heads out. * * * He took the $1.45 price."

In our former opinion in this case we said:

"This was not an action to recover damages for potatoes the defendants refused to accept. The defendants accepted all of the potatoes in the bins they contracted to buy. They claim to have paid for all the sacks of potatoes they took away. The plaintiff, on the other hand, gives us the exact cubic contents of the bins, and claims they took out over $2,300 worth of potatoes for which they did not pay him.

"Section 69-463, Comp. St. 1929, provides: 'Where, under a contract to sell or sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods.'

"The plaintiff has brought the proper action under this law for the balance of the purchase price he claims to be due him. * * *

"In the case at bar, the controversy is narrowed to a single question: What was the true and actual amount of potatoes, of certain specifications, contained in some 14 bins of potatoes sold by the plaintiff and accepted by defendants?"

The appellee, on the second trial of this case, introduced evidence to show the kind, quality, quantity, and condition

of the potatoes sold as of about March 1, 1942, and then introduced evidence to show how much cubical space potatoes of that kind, quality, and in their then condition would occupy in order to produce a bushel or 60 lbs. of potatoes that would meet the specifications of the contract. On the other hand the appellants offered evidence of what was actually done in processing the potatoes, the kind and quality of the potatoes that they processed together with their records of the potatoes they said they actually removed. They also introduced evidence as to the cubical space that either a bushel or a hundredweight of potatoes would occupy. Under the issues raised by the pleadings, the evidence and the issue as defined in our former opinion, we think the court properly submitted the case on the correct theory.

There is some evidence as to what was done with the potatoes which the appellants left in the cellar after they had finished processing. These consisted of some 600 to 800 partial sacks. The appellee testified that Ted Currier told him to process them and clean up the cellar and that he would pay for doing so. The appellee subsequently processed what was left and from them he obtained some 528 sacks of various grades. There is testimony that from 50 to 75 percent of these were of a grade that should have gone under the contract. Appellee disposed of these potatoes but testified that the work had in connection therewith was worth more than the salvaged potatoes. Under the issues submitted the appellants bought all of the potatoes of a certain kind in these bins that would meet the specifications of the contract and if they failed to properly process them and left potatoes in the cellar that met the specifications it was their liability. If they subsequently had another reprocess of what was left at an expense greater than the value of what was obtained therefrom they cannot complain for under their contract they were required to process the potatoes in these 14 bins according to definite specifications and their failure to do so cannot relieve them of their liability.

Appellants contend that the court erred in refusing ad-

mission of their exhibits A, B, and C. These exhibits were the appellants' records made in connection with the washing of the potatoes taken to their Morrill warehouse. All the potatoes that the appellants claim were taken to their Morrill warehouse are set out in exhibits 14, 14-A, 14-B, and 14-C which exhibits were admitted in evidence and which set forth the number of bags and weight of the potatoes taken there. The admitted contract does not require the potatoes to be washed. The record made in connection with the washing is immaterial and irrelevant. The trial court was right in sustaining the objections made thereto.

The appellants contend that the court erred in striking all of the testimony of Carl Thomas relating to an experiment he made with sprouted potatoes to show the loss in weight and admonishing the jury not to consider it. Carl Thomas is a farmer living near Morrill, Nebraska. He testified that on July 3, 1942, he took a box that was constructed so that it had an opening one foot square and filled it with potatoes. The potatoes used were severely sprouted and had been placed on the warehouse floor where the experiment was conducted. He attempted, as nearly as possible, to level the top of the potatoes in the box. He then weighed the potatoes in the box with the sprouts and they weighed 36½ lbs. He then removed the sprouts from the potatoes in the box and from sufficient more of those on the warehouse floor so that he could again fill the box level full with the potatoes from which the sprouts had been removed. These weighed 41 lbs.

We think the court was right in striking this testimony and admonishing the jury not to consider it. The experiment was not based upon a sufficiently similar situation of fact as the one here involved to make it admissible. The potatoes used in the experiment were nearly all severely sprouted and getting soft and were loose on the warehouse floor so that in placing them in the box many of the sprouts must necessarily have come between the potatoes and thus materially decreased the number that could be placed therein while the potatoes here involved were placed in the cellar

when they were firm and without sprouts so that whatever sprouts they developed would have to grow in the voids between the potatoes. As stated in 20 Am. Jur., Evidence, s. 756, p. 628: "One desiring to make an experiment in court or to introduce evidence of an experiment made out of court should first show that the experiment is to be made or was made, as the case may be, under conditions and circumstances similar to those prevailing at the time of the occurrence involved in the controversy; otherwise, the courts will not, as a general rule, permit the making of the experiments or the introduction of evidence thereof. It is not, however, necessary in order to render experiments permissible or to admit evidence of experiments made out of court that the conditions be identical with those existing at the time of the occurrence; it is sufficient if there is a substantial similarity. Minor variations in the essential conditions go to the weight rather than to the admissibility of the evidence. If, on the other hand, the requirement of substantial similarity is not satisfied, the courts have uniformly refused to admit experimental evidence."

There is another reason why the ruling of the court should be sustained. As stated in Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627: "This court recognizing the difficulties attending an offer of evidence of illustrative experiments has adopted the rule that in such cases a discretion is conferred upon the trial court and that unless there is a clear abuse of discretion a judgment will not be reversed on account of the admission or rejection of such evidence." We do not think that the trial court abused its discretion in refusing the admission of the evidence of this experiment.

Appellants complain that the court, in presenting the issues to the jury, largely copied the appellee's amended petition and in so doing presented issues upon which there was no evidence. Appellants refer particularly to that part of instruction No. 2 which is as follows: " * * * that the defendants removed said potatoes in various quantities within said period of time, and that the defendants afforded plain-

tiff no opportunity of ascertaining the number of bags removed therefrom and no opportunity to weigh, measure or ascertain the actual quantity of potatoes separated as marketable potatoes from said bins by the defendants; that the defendants weighed only a part of the potatoes which they processed as marketable potatoes. Plaintiff further alleges that the defendants in processing said potatoes caused the aggregate of said potatoes to be run over a screen having a mesh of one and seven-eighths inches instead of one and one-half inches as agreed, all of which was done by the defendants to defraud plaintiff in making it appear that the amount of saleable potatoes purchased were less than said bins actually contained; * * * ."

This court has frequently criticized the practice of copying the pleadings as a method of stating the issues to a jury and where they contain allegations not supported by evidence it may be reversible error to include such allegations in defining the issues if the reviewing court is satisfied that the jury may have been misled thereby. See Hutchinson v. Western Bridge & Construction Co., 97 Neb. 439, 150 N. W. 193; McClelland v. Interstate Transit Lines, 139 Neb. 146, 296 N. W. 757. However, the fact that the court copied the pleadings in presenting the case to the jury is not alone sufficient to cause a reversal unless it can be said that the complaining party was prejudiced thereby. See Scott v. New England Mutual Life Insurance Co., 128 Neb. 867, 260 N. W. 377; Merritt v. Ash Grove Lime & Portland Cement Co., 136 Neb. 52, 285 N. W. 97.

Applying these principles to that part of instruction No. 2 of which the appellants complain, we do not find that the appellants were prejudiced thereby so that a retrial should be had. Taking first that part of the instruction which refers to the processing of the potatoes over a one and seven-eighths inch screen: The appellee testified that by the terms of their contract the potatoes were to be run once over a one and one-half inch screen and that running them more than once would cause damage. The appellants did run the potatoes over a one and seven-eighths screen and then what

went through were run over a one and one-half inch screen to get one-drop seed potatoes. Appellee knew this was being done after three bin spaces of potatoes had been processed. Second, that part of the instruction which recites that the appellants weighed only a part of the potatoes processed as marketable: Appellants and their witnesses testified they weighed all of the processed potatoes and paid for them. Appellee offered evidence to show the amount of potatoes in the bins at the time of the sale and what part thereof would comply with the contract requirements. The appellants' evidence was not conclusive. It was a question for the jury. Third, that part of the instruction which recites that the appellants removed said potatoes in various quantities within said period of time and that the appellants offered appellee no opportunity of ascertaining the number of bags removed therefrom and no opportunity to weigh, measure or ascertain the actual quantity of potatoes separated as marketable: This statement finds no support from the evidence in the record outside of possibly the first three bin spaces emptied.

The court instructed the jury that these instructions merely set forth the contentions of the parties and were not to be considered as evidence. The issues were subsequently limited and defined in other instructions. While it would have been better to have left out of instruction No. 2 the allegations discussed under the first and third phases of the criticized language, however, we do not think the jury could have been misled by the language used in view of the instructions as a whole and therefore come to the conclusion that it does not constitute prejudicial error.

For the reasons herein stated the verdict and judgment should be sustained.

AFFIRMED.